**LAW OFFICE OF JERRY L. STEERING**
Jerry L. Steering, Esq. (SBN 122509)
jerry@steeringlaw.com
Brenton W. Aitken Hands, Esq. (SBN 308601)
brentonaitken@gmail.com
4063 Birch Street, Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883
Attorneys for Plaintiff Kiley Deliefde Swaine

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILEY DELIEFDE SWAINE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF TORRANCE, CODY WELDIN, CHRISTOPHER TOMSIC and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1) UNREASONABLE / UNLAWFUL SEARCH and SEIZURE of PERSONAL PROPERTY [U.S. CONST. AMEND. 4 via 42 U.S.C. § 1983];<br><br>2) UNREASONABLE / UNLAWFUL SEIZURE of PERSONAL PROPERTY WITHOUT PROCEDURAL DUE PROCESS of LAW [U.S. CONST. AMEND 14 via 42 U.S.C. § 1983];<br><br>3) VIOLATION OF SUBSTANTIVE DUE PROCESS of LAW [U.S. CONST. AMEND 14 via 42 U.S.C. § 1983];<br><br>4) UNLAWFUL TAKING OF PROPERTY WITHOUT JUST COMPENSATION [U.S. |

CONST. AMENDS. 5 & 14 via 42 U.S.C. § 1983]; and

5) MUNICIPAL LIABILITY [*MONELL LIABILITY[1]*] for POLICY / *de facto* POLICY, via LONGSTANDING CUSTOMS and PRACTICES OF POLICE AGENCY POLICY, via 42 U.S.C. § 1983, FOR CREATION and MAINTAINENCE of NEO-NAZI / WHITE SUPREMACIST POLICE OFFICER GANG TERRORIZING PUBLIC

**JURY TRIAL DEMANDED**

**COMES NOW** plaintiff Kiley Deliefde Swaine and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this Honorable Court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the City of Torrance, County of Los Angeles, State of California, within the territorial jurisdiction of this Honorable Court, venue properly lies in this Honorable Court pursuant to 28 U.S.C. § 1391(b)(2).

3.      As of the date of this initial filing of this action, plaintiff has filed his California Government Claim for Damages against City of Torrance pursuant to

---

[1] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

COMPLAINT FOR DAMAGES

2

the California Tort Claims Act[2]; a condition precedent to plaintiff filing his California state law claims against defendants City of Torrance ("CITY"), Cody Weldin, Christopher Tomsic and any other California public employee, in this instant lawsuit.

4. Plaintiff will amend[3] his Complaint for Damages in this action to include his California state law claims against the defendants to the same, including any "DOE" defendants, or defendants otherwise presently unknown to plaintiff, following the response[4] of the City of Torrance to plaintiff's California Government Claim for Damages, or, any such failure to respond within the statutory forty-five (45) day period required of California Public Entities to respond to such Government Claims for Damages filed with it.

5. Plaintiff Kiley Deliefde Swaine, hereinafter referred to as "plaintiff Swaine" or "SWAINE" or simply "plaintiff", is a natural person, who, at all times complained of in this action, resided in the County of Los Angeles, State of California.

6. Defendant City of Torrance, hereinafter also referred to as "CITY" or "City of Torrance", is a municipal entity located in the County of Los Angeles, State of California; within the territorial jurisdiction of this court.

7. Defendant Christopher Tomsic, hereinafter also referred to as "TOMSIC", at all times complained of herein, was a certified peace officer and a sworn police officer, employed by the Torrance Police Department in that capacity, who was acting as an individual person under the color of state law, in his

---

[2] Formerly known when enacted as the "California Tort Claims Act"; Cal. Gov't Code § 910 et seq., it was renamed the "California Government Claims Act", when California Courts declared that the Claim Filing requirements of the Government Code, apply to contract claims (actions *ex contractu*), in addition to action arising out of "tort"; actions *ex* actions *ex delicto*).
[3] Either as a matter of right, or, otherwise with court permission.
[4] Or the lack thereof any such response within that 45 day period in which the City has to respond to a Government Claim for Damages.

COMPLAINT FOR DAMAGES

individual capacity as a sworn Torrance Police Department police officer, and was acting in the course of and within the scope of his employment with defendant CITY

8.    Defendant Cody Weldin, hereinafter also referred to as "WELDIN", is, and at all times complained of herein, was, a certified peace officer and a sworn police peace officer, employed by the Torrance Police Department, acting as an individual person under the color of state law, in his individual capacity as a police officer, and was acting in the course of and within the scope of his employment with defendant CITY.

9.    Defendants DOES 1 through 6, inclusive, are certified California peace officers and / sworn police officers and/or Investigators and/or Detective and/or Public Service Officers and/or Special Officers and/or Dispatchers and/or some other public officer, public official or officer / agent / employee of defendant CITY and/or otherwise employed by the Torrance Police Department (and/or with some other public entity), who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise the proximate and/or legal cause of the plaintiff's injuries and damages, and are responsible for and liable to plaintiff for the acts complained of in this action, such as by failing to intervene and stop the vandalization of the plaintiff's car as discussed below, and whose identities are, and remain unknown to plaintiff, who will amend his complaint to add and to show the actual names of said DOE defendants when so ascertained by plaintiff.

10.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as certified California peace officers and / sworn police officers and/or Investigators and/or Detective and/or Public Service Officers and/or Special Officers and/or Dispatchers and/or some other public officer, public official or

officer / agent / employee of defendant CITY, and/or otherwise employed by the Torrance Police Department (and/or with some other public entity), and were acting in the course of and within the scope of their employment with defendant CITY (and/or with some other public entity).

11.     Defendants DOES 7 through 10, inclusive, are Supervisory personnel and/or policy making and/or final policy making officials for the Torrance Police Department / City of Torrance, employed by Torrance Police Department and defendant CITY (and/or some other Municipal entity), and were Certified California Peace Officers, Sworn Peace Officers of policy making ranks and authority, such as the Chief of Police and/or Assistant Chief(s) and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by Torrance Police Department and defendant CITY (and/or some other Municipal entity), who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as via major policy making decisions on personnel matters, including:

1)     The longstanding knowing tolerance of and condoning by CITY and DOES 7 through 10, inclusive[5], of murders and other forms of homicide by Torrance Police Department police officers of innocents[6] (some being racially motivated, and some not), as well as the knowing widespread tolerance of and condoning of frequent police beatings and false arrests of

_____

[5] Such as by failing to investigate, or even by failing to take a complaint report, or to even discourage civilians from making any such personnel complaints; especially those complaints by non-white civilians that they were subjected to demeaning traffic stops by Torrance Police Department police officers, for conduct such as driving an expensive car in a predominantly white / upscale neighborhood.

[6] Including criminal federal constitutional violations under 18 U.S.C. § 242.

COMPLAINT FOR DAMAGES

innocents by Torrance Police Department police officers, and of other California state criminal, and federal and state constitutional violations[7], including defendants Christopher Tomsic and Scott Weldin and DOES 1 through 6, inclusive;

2)    The longstanding custom and practice of CITY and DOES 7 through 10, inclusive[8], by ignoring frequent civilian complaints made by civilians against violating Torrance police officers, including the murders, beatings and false arrests referenced immediately above, including and especially racially motivated traffic and pedestrian stops of innocent non-white persons, and by either failing to investigate them at all, or, by investigating said complaints in a manner seeking only to reach a pre-determined conclusion, that the civilian complaints were without merit, and that the Torrance Police Department police officer was "in the right", and the complaining civilian was "in the wrong"[9];

3)    The longstanding custom and practice of CITY and DOES 7 through 10, inclusive[10], of knowingly tolerating Neo-Nazi / White Supremacist groups of Torrance Police Department police officers, who individually and in concert, and as a group / gang actually discuss with each other, on-duty, how much they despise and hate Jews, black persons of African descent,

[7] Some of these Torrance Police Department beatings of innocents, misdemeanants, the homeless, and the defenseless, not being racially motivated, and some being racially motivated, and, also, to advance the goals of, and for the benefit of the / a White Supremacist / Neo-Nazi group(s) / gang(s) of Torrance Police Department police officers.

[8] Such as by failing to investigate, or even by failing to take a complaint report, or to even discourage civilians from making any such personnel complaints.

[9] From 2016 to 2019, Torrance police upheld just three citizen allegations of police misconduct and zero allegations of racial profiling made against officers, according to data submitted to the California attorney general's office. Katz, the former independent police auditor, described those statistics as "concerningly low."

[10] Such as by failing to investigate, or even by failing to take a complaint, report, or to even discourage civilians from making any such personnel complaints.

persons of Mexican descent, members of the LGBT community

and assorted other identifiable groups of persons who are often typically

looked-down-upon by members of the law enforcement community, to

patrol the streets of Torrance;

12.     Defendants DOES 7 through 10, inclusive, are also liable to plaintiff

in this action via: a) Supervisory Liability (i.e. failure to properly supervise,

improperly directing subordinate officers, approving unlawful / unconstitutional

actions of subordinate officers), b) via Bystander Liability (failing to intervene in

and stop unlawful actions of their subordinates and/or other officers), and c) via

such as by creating and/or causing the creation of and/or contributing to the

creation of the policies and/or practices and/or customs and/or usages of the

Torrance Police Department for excessive force, false arrests, malicious criminal

prosecutions and otherwise brutalizing and terrorizing the public, that has led to the

creation, maintenance and tolerance White Supremacist / Neo-Nazi Police Officer

Gang(s) within the Torrance Police Department; the likes of which has reigned

terror over the residents of and visitors to the City of Torrance.

13.     At all times complained of herein, DOES 7 through 10, inclusive,

were acting as individual persons acting under the color of state law, pursuant to

their authority as the Chief of Police and/or the Assistant Chief(s) and/or Captains

and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or

policy making and/or final policy making officials with the Torrance Police

Department, and/or some other public official(s) with defendant CITY, and were

acting in the course of and within the scope of their employment with defendant

CITY.

14.     At all times complained of herein, defendants DOES 7 through 10,

inclusive, were acting as individual persons under the color of state law; under and

pursuant to their status and authority as peace officers and/or Supervisory peace

officers (as described herein, above and below), and/or policy making peace officers, with the Torrance Police Department and/or otherwise with defendant CITY.

15.    Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when made known to plaintiff.

16.    In addition to the above and foregoing, defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding, and a common plan and scheme, to deprive the plaintiff of his federal Constitutional rights as complained of in this action.

17.    Defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive, acted in joint and concerted action to so deprive the plaintiff of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States Constitutional and statutory law, and in violation of California Constitutional and statutory state law.

18.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiff's federal and state constitutional and statutory rights, as complained of herein.

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19.    On January 27, 2020, at approximately 4:06 a.m., Torrance Police Department ("TPD") police officers received a call for service from a civilian, who allegedly reported that several persons were possibly involved in the theft of mail from an apartment building in Torrance, California.

20.    Pursuant to that call for service, at approximately 4:24 a.m. on January 27, 2020, several Torrance Police Department police officers and

defendants Cody Weldin, Christopher Tomsic and DOES 1 through 3, inclusive, went to the scene of the call for service.

21.     Two of the Torrance Police Department police officers who responded to the call for service, defendants Christopher Tomsic and Cody Weldin, located plaintiff Kiley Swaine and his friend, and detained them for investigation.

22.     Torrance Police Department police officers Cody Weldin ("WELDIN"), Christopher Tomsic ("TOMSIC") and DOES 1 through 3, inclusive, had located plaintiff's 2004 Hyundai Electra automobile at the scene of the call; the registered owner of who was plaintiff Kiley Swaine.

23.     Thereafter on that day, January 27, 2020, plaintiff and his friend, were arrested by Torrance Police Department police officers WELDIN, TOMSIC") and DOES 1 through 3, inclusive, for suspected conspiracy to commit mail theft from a Torrance, California, apartment building. Plaintiff is innocent of, and was never prosecuted for those crimes.

24.     Pursuant to plaintiff's arrest by WELDIN, TOMSIC and DOES 1 through 3, inclusive, defendants WELDIN, TOMSIC and DOES 1 through 6, inclusive, had plaintiff's car towed to a local tow yard; Van Lingen Towing, in Torrance, California.

25.     After plaintiff had been arrested and taken to the Torrance City Jail, defendants WELDIN, TOMSIC and DOES 1 through 3, inclusive, vandalized plaintiff's car. Moreover, defendants DOES 4 through 6, inclusive, stood by and watched defendants WELDIN, TOMSIC and DOES 1 through 3, inclusive, vandalize plaintiff's car, and failed and refused to intervene and stop the vandalism.

26.     Defendants WELDIN, TOMSIC and DOES 1 through 3, inclusive, spray-painted a Swastika on the back seat of plaintiff's car, a Happy Face on the front passenger seat, and some paint on the passenger side outside rear view mirror and on the rear bumper. Said defendants had also emptied a box of cereal and some

protein powder all over the interior of his Hyundai. They also trashed the plaintiff's car, and broke certain items therein[11].

27.    The vandalization of plaintiff's car by defendants WELDIN, TOMSIC and DOES 1 through 3, inclusive, was witnessed by DOES 4 through 7, inclusive, and Van Linger Towing tow truck driver Christopher Dunn.

28.    After defendants WELDIN, TOMSIC and DOES 1 through 3, inclusive, were done vandalizing plaintiff's car, Christopher Dunn placed plaintiff's car on a flat-bed tow truck, and towed plaintiff's car to Van Lingen Towing.

29.    Plaintiff was taken to the Torrance City Jail and booked on the conspiracy charges[12].

30.    The next day, January 28, 2020, the Torrance Police Department attempted to telephone plaintiff's mother, Gay DeLiefde Swaine, but she was at work. Mrs. Swaine later saw the phone message from Torrance PD, and at approximately 3:30 p.m. that day, she called the Torrance Police Department back. Mrs. Swaine was told that plaintiff had been arrested, and was presently in the Torrance Police Department Jail.

31.    Plaintiff's parents, Robert Preston Swaine and Gay DeLiefde Swaine, went to pick-up plaintiff at the Torrance Police Department, as he was to be released on a misdemeanor citation.

32.    Mrs. Swaine asked Torrance Police Department officers at the station what the procedures were for getting plaintiff's car out of impound. She was told to get a Vehicle Release Form from Torrance PD, which she so obtained.

33.    After plaintiff was cited and released from custody, the Swaines all

_____

[11] See, attached Exhibit "A"; photos of plaintiff's vandalized 2004 Hyundai.
[12] Later on, the police determined that plaintiff was an innocent man, and the criminal charges were dropped against plaintiff.

left Torrance PD, and drove to the tow yard where plaintiff's car had been towed; Van Lingen Towing, at 2755 Lomita Street, in Torrance, California.

34.     When they arrived at Van Lingen Towing, it was 5:15 p.m., the Swaines were told by the towing company employee / agent that they were closed, and for the Swaines to come back the next day.

35.     On January 29, 2020, plaintiff and his father, Robert Swaine, returned to Van Lingen Towing to retrieve plaintiff's car.

36.     When Van Lingen Towing delivered plaintiff's car to him at the tow yard, he noticed that someone had vandalized his car.

37.     Plaintiff saw that someone had spray-painted a Swastika on the back seat of his car, a Happy Face on the front passenger seat, and some spray-paint on the rear bumper and on the passenger side outside rear view mirror. In addition, someone had emptied a box of cereal and some protein powder that was tossed all over the interior of his Hyundai[13], and the interior of the plaintiff's car was, for lack of a better term, trashed.

38.     The towing company's principal(s) / manager(s) / employee(s) / agent(s) (hereinafter referred to as the towing company's "AGENT(S)") said that plaintiff's car must have arrived that way, and plaintiff told him that his car was not in that condition when it was towed.

39.     The Van Lingen Towing AGENT(S) then told plaintiff that they have video surveillance cameras that would have captured the image of plaintiff's car's condition when it came into the lot.

40.     Plaintiff and his father then decided it would be best for them to call the Torrance Police Department to report the vandalism, which they proceeded to do.

_____

[13]See attached Exhibit "A"; photos of plaintiff's vandalized 2004 Hyundai.

COMPLAINT FOR DAMAGES

41.     Thereafter, on January 29, 2020, shortly after plaintiff reported the vandalism to the Torrance Police Department, two Torrance Police Department officers went to Van Lingen Towing, met the plaintiff and his father there, and inspected plaintiff's vandalized car; Sgt. Daniel Vazquez and Officer Scott Nakayama (and DOES 6 and 7).

42.     The Torrance police officers began to write their report and confiscated the spray-paint can that had been left inside the car, that was apparently used to vandalize the same.

43.     The Torrance police officers spoke with plaintiff and his father, and the towing company's AGENT(S), who told the officers that they had video surveillance of their lot, and that a review of it might determine if the car arrived in that condition.

44.     They all went inside of the towing company's facility. Plaintiff and his father were told to wait in the waiting area, while the police officers and the towing company's AGENT(S) went into the tow yard office; an office with a large glass window.

45.     Through the window, plaintiff and his father observed the officers and the towing company's AGENT(S) watching the video, but from their angle, they could not see what the police officers were viewing.

46.     After a short time of viewing the video, the above-referenced police officers and the towing company AGENT(S) exited the tow yard office, and approached plaintiff and his father at the same.

47.     Van Lingen Towing knew from their tow truck driver, Christopher Dunn, that defendants Cody Weldin and Christopher Tomsic[14] were the vandals.

_____

[14] . . . and DOES 1 through 6, inclusive.

COMPLAINT FOR DAMAGES

48.     Accordingly, under the circumstances of that meeting of plaintiff, his father, the police and the towing company AGENT(S), investigating Torrance police officers Sgt. Vazquez and Officer Nakayama, became aware of facts that would have caused them to strongly suspect that defendants TOMSIC and WELDIN and DOES 1 through 3, inclusive, or at least some member of the one or more White Supremacist / Neo-Nazi group(s) / gang(s) of Torrance Police Department police officers had done the vandalizing; the Swastika painted on the back seat being the main clue of the involvement of those type of Torrance police officers.

49.     On January 29, 2020, said Torrance police officers told the plaintiff, and/or at least watched the towing company's AGENT(S) tell plaintiff, that the towing company accepted responsibility for the damage to his car, that they suspended one of their employees who they suspected to have vandalized it, that they were further investigating the matter, and that Van Lingen Towing would pay for the damages to plaintiff's car.

50.     Based upon that series of events at the tow yard on January 29, 2020, wherein Van Lingen Towing immediately accepted responsibility for the damage to the plaintiff's car, based upon the Torrance Police Department police officer's presence at the towing yard office, the nature of those discussions there with the officers and towing company AGENT(S), above-referenced, a subsequent series of events, described below, plaintiff was induced by the police officers and the towing company AGENT(S) into believing that a Van Lingen Towing employee / agent had been the person(s) who vandalized his car, and not any police officer[15].

─────────────────────

[15] As shown above, Sgt. Daniel Vazquez and Officer Scott Nakayama were present at the tow yard and had met with plaintiff and his father at the tow yard office. They knew that they were there because the plaintiff had complained to the Torrance Police Department about his car being vandalized, and they knew that they, along with the personnel at the towing company, had

COMPLAINT FOR DAMAGES

51.     Van Lingen Towing's AGENT(S) also told plaintiff to get estimates for the repair of the car, and plaintiff and his father then left the tow yard.

52.     Plaintiff then drove his vandalized car home. While he did so, the protein powder blew all over him and his car's interior. Plaintiff was extremely upset and felt violated. Moreover, being unable to use the passenger side mirror made it a safety hazard.

53.     Thereafter, plaintiff obtained estimates to repair the exterior of his vandalized car, and another one to repair the interior of the vehicle.

54.     On February 20, 2020, plaintiff emailed Van Lingen Towing the estimates for his car repair; said estimates ranging from approximately $2,000.00 to approximately $2,500.00.

55.     Thereafter, plaintiff received a call from a Van Lingen Towing AGENT(S), who offered $2,250.00 to plaintiff to settle the matter between Van Lingen Towing and plaintiff, regarding paying for the damage to plaintiff's car.

56.     Plaintiff believed that it was in his interest to take the $2,250.00, and on February 27, 2020, plaintiff went to Van Lingen Towing and picked-up check for $2,250.00[16].

57.   Again, based upon the statements of Torrance Police Department Sgt. Daniel Vazquez and Officer Scott Nakayama during their meeting with plaintiff, his father and the towing company AGENT(S) of January 29, 2020 at Van Lingen Towing, plaintiff was induced to reasonably believe that the Torrance Police Department had concluded, along with Van Lingen Towing, that a Van Lingen

_____

induced plaintiff to believe that a Van Lingen Towing employee had been the vandal; not a police officer.
[16] See, attached Exhibit "B"; a true and correct copy of said $2,250.00 check paid by Van Lingen Towing to plaintiff.

COMPLAINT FOR DAMAGES

Towing Company employee / agent had been the vandal of plaintiff's car; not a police officer.

58.     Accordingly, when plaintiff accepted the $2,250.00 check from Van Lingen Towing on February 27, 2020, he had done so under that induced belief that Van Lingen Towing had vandalized his car, and not any Torrance Police Department police officer.

59.     Plaintiff shows that this "induced belief", that a Van Lingen Towing employee (and not a police officer) vandalized plaintiff's car, was perpetuated by the Torrance Police Department, well after the Winter of 2020.

60.     Torrance Police Department police officers were well aware that defendant Torrance Police Department police officers Christopher Tomsic and Cody Weldin (and DOES 1 through 3, inclusive), had been the persons who had vandalized plaintiff's car, since at least March of 2020; less than two months following the January 27, 2020 vandalism incident.

61.     Moreover, during the Torrance Police Department's investigation of the vandalization of the plaintiff's car, they knew since at least the Spring of 2020, that Torrance Police Department police officers Christopher Tomsic and Cody Weldin were part of a White Supremacist / Neo-Nazi gang / group of police officers within the Torrance Police Department.

62.     Although the Torrance Police Department fired defendant police officers Christopher Tomsic and Cody Weldin[17], and apparently suspended thirteen (13) other Torrance Police Department police officers for being suspected members of some sort of White Supremacist / Neo-Nazi group(s) and/or gang(s) of police officers within the Torrance Police Department, the Torrance Police Department, from top management to the line officers (i.e. DOES 5 through 10,

_____

[17] . . . and DOES 1 through 6, inclusive.

COMPLAINT FOR DAMAGES

inclusive), made a deliberate conscious decision to not notify plaintiff that Christopher Tomsic and Cody Weldin[18] were the ones who vandalized his car.

63.     DOES 5 through 10, inclusive, along with Sgt. Daniel Vazquez and Officer Scott Nakayama, knew that plaintiff was induced in substantial part by their conduct[19] to believe that a Van Lingen Towing employee / agent, and not a police officer, had vandalized his car on January 27, 2020.

64.     DOES 5 through 10, inclusive, along with Sgt. Daniel Vazquez and Officer Scott Nakayama, knew that plaintiff had asked their employing agency to find out who vandalized his car when they complained to the Torrance Police Department and its officers re the same. Said defendants also know that plaintiff would have wanted to know that Torrance Police Department police officers WELDIN and TOMSIC (and DOES 1 through 3, inclusive) were the actual vandals. Yet, they decided to leave plaintiff with the false impression that a towing company employee vandalized his car, to protect the CITY and defendants WELDIN and TOMSIC (and DOES 1 through 3, inclusive) from civil and criminal liability, from internal discipline, and from obloquy.

65.     Van Lingen Towing knew from their tow truck driver, Christopher Dunn, that defendants Cody Weldin and Christopher Tomsic[20] were the vandals.

66.     Accordingly, in order to appease the Torrance Police Department by protecting that agency from civil liability and obloquy, in large part to retain Van Lingen's status as being part of the Torrance Police Department's rotational tow list for police tows, Van Lingen Towing agreed with Sgt. Vazquez and/or Officer Nakayama and/or DOES 5 through 10, inclusive, to accept the blame for the

_____

[18] . . . and DOES 1 through 6, inclusive.
[19] . . . and DOES 6 through 10, inclusive.
[20] . . . and DOES 1 through 6, inclusive.

vandalism to the plaintiff's car; to induce plaintiff to not suspect that any Torrance Police Department police officers had committed that act of vandalism to his car.

67.     All of this was done a part of an ongoing conspiracy / agreement / tactic and/or express understanding, between the Torrance Police Department and Van Lingen Towing, to make and keep plaintiff ignorant of the fact that Cody Weldin and Christopher Tomsic[21] were the real vandals; not some towing company employee / agent. Van Lingen Towing's ownership is/are not stupid, and they were better-off, politically, and businesswise, to "*take the hit*" for the vandalism for a couple of young Torrance Police Department police officers.

68.     The Van Lingen Towing tow truck driver who actually transported the plaintiff's then vandalized car to the Van Lingen Towing tow yard in Torrance, California, Christopher Dunn, was supposedly working on his last night, on his last tow with / on behalf of Van Lingen Towing[22].

69.     Christopher Dunn begrudgingly admitted to investigating Torrance Police Department police officials, that he personally witnessed defendant WELDIN and TOMSIC vandalize plaintiff's car at the scene of the plaintiff's arrest on January 27, 2020[23].

70.     This conspiracy resulted in plaintiff not filing a California Government Claim for Damages[24] against the City of Torrance until now; a predicate to filing a lawsuit against the City of Torrance and the involved Torrance police officers for vandalizing his car under California state law.

———————————

[21] . . . and DOES 1 through 6, inclusive.

[22] *Ergo*, no worry re being fired. Moreover, the last night of Christopher Dunn seems to be the "suspension" of the possibly involved Van Lingen Towing employee, that Van Lingen Towing told the plaintiff was suspended for his incident.

[23] Christopher Dunn did not want to implicate ("rat-out") either defendants Christopher Tomsic or Scott Weldin. He only did so when pressured by the investigating police officers, and the circumstances of that interrogation.

[24] Formerly known as the California Tort Claims Act.

71.   Thereafter, on October 2, 2021 plaintiff received two letters from the Los Angeles County of Probation Office; said letters informing plaintiff, *inter alia*, that criminal felony charges had been filed against (now former) Torrance Police Department police officers Cody Weldin and Christopher Tomsic for vandalizing his car on January 27, 2020[25].

72.   That false belief by plaintiff, that a Van Lingen Towing employee vandalized his car, and not any police officer, was abruptly changed on October 2, 2021, when plaintiff received a restitution amount request from the Los Angeles County Probation Office; said request first alerting plaintiff of the existence of the still pending criminal action against Scott Weldin and Christopher Tomsic; *The People of the State of California v. Christopher Tomsic and Scott Weldin*; Los Angeles County Superior Court Case Number BA497887; a felony vandalism and felony conspiracy to vandalize case, for the vandalizing of plaintiff's car on January 27, 2020.

73.   Accordingly, both plaintiff's federal and California state law claims "accrued" on October 2, 2021[26].

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Rights**
**Unlawful / Unreasonable Search And Seizure Of Personal Property**
**(Against defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive)**

74.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 73, inclusive, as though set forth in full herein.

─────────────────────

[25] See, attached Exhibit C - Restitution Information Request Letter from LA County Probation Department re Cody Weldin, and attached Exhibit D - Restitution Information Request Letter from Los Angeles County Probation Department re Christopher Tomsic.
[26] And, therefore, the statute of limitations for plaintiff to file his California Government Claim for Damages, as well that for him to file this instant lawsuit, and the amendment thereof, run anew from October 2, 2021.

COMPLAINT FOR DAMAGES
18

75.  As set  forth above, on January 27, 2020, pursuant to a call for service for suspected possible stolen mail, plaintiff and his friend were located in his automobile near the scene of the subject of the call-for-service, by defendants Cody Weldin and Christopher Tomsic[27].

76.  Plaintiff and his friend were arrested, or otherwise caused to be arrested, by Torrance Police Department police officers, including defendants Cody Weldin and Christopher Tomsic and DOES 1 through 6, inclusive, for suspected conspiracy to steal U.S. Mail.

77.  Also as set forth above, plaintiff was taken to jail by Torrance Police Department police officers, and booked for those charges shown above, on January 27, 2020.

78.  Plaintiff was thereafter released from on January 28, 2020 from the Torrance City Jail, on a citation to appear in court on his arrest charges.

79.  Also as set forth above, on January 29, 2020, plaintiff[28] discovered that his 2004 Hyundai, Elantra, automobile, had been vandalized by someone spray-painting a Swastika on the back seat of his car, spray-painting a Happy Face on the front passenger seat of his car, and by seemingly randomly spray-painting blotches on the passenger side outside rear view mirror, and on the rear bumper of plaintiff's Hyundai.

80.  On October 2, 2021, plaintiff discovered that TOMSIC, WELDIN and DOES 1 through 6, inclusive vandalized his car.

81.  Also as set forth above, while defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, vandalized plaintiff's car, DOES 4 through 6, inclusive, watched them do so.

---

[27] . . . and DOES 1 through 6, inclusive.
[28] Along with plaintiff's father, Robert Swaine.

COMPLAINT FOR DAMAGES
19

82.     Moreover, DOES 4 through 6, inclusive, had an adequate opportunity, as well as the ability, to have intervened and to have stopped defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, from continuing to vandalize plaintiff's car, and, notwithstanding that knowledge and opportunity, just stood there / failed to intervene, and watched DOES 4 through 6, inclusive, vandalize plaintiff's car.

83.     Also as set forth above, defendants TOMSIC's, WELDIN's and DOES 1 through 3's vandalizing of plaintiff's car, and DOES 4 through 6, inclusive's failure to intervene to stop the same[29], was a meaningful interference with plaintiff's possessory and property rights in his car, while seizing the same pursuant to a police tow of plaintiff's car pursuant to his arrest.

84.     There was no legitimate law enforcement objective or purpose in defendants TOMSIC's, WELDIN's and DOES 1 through 3's vandalizing of plaintiff's car, and said defendants so vandalized his car to advance the goals and objectives of that / those group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department, to wit; to terrorize the public in Torrance, California, that group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department run that town and its streets; a form of Neo-Nazi group chest-puffing and bragging, by officers who are drunk with their own power, and who despise and mistreat those types / groups of persons who are often mistreated by society (i.e. Jews, blacks, members of the LBGT community, and other non-white types.)

85.     Accordingly, said vandalizing of plaintiff's car by defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, constitutes and

---

[29] A duty imposed upon them under federal constitutional standards for police "bystander" liability.

unreasonable seizure of plaintiff's car under the Fourth Amendment to the United States Constitution.

86.    As a direct and proximate result of the actions of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, plaintiff has suffered: 1) damage to his car and the attendant costs of repairing the same, including lost wages, and 2) mental and emotional pain suffering and distress from the shock that a Torrance police officer seemed to have threatened him with painting a Swastika on his back seat, and otherwise from such "violation" of one's basic liberty interests, and from the shock to one when one is traumatically caused to realize that often, the persons entrusted with one's personal safety and security (the police), are more dangerous to one, than the persons who they are supposed to be protected from by the police; all in an amount to be proven at trial in excess of $3,000,000.00.

87.   In addition to the above and foregoing, plaintiff shows that the actions of defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive[30], were done maliciously, oppressively and in reckless disregard of the plaintiff's constitutional rights; entitling plaintiff to punitive / exemplary damages in an amount to be proven at trial in excessive of $3,000,000.00.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Rights**
**Unlawful / Unreasonable Search and Seizure of Personal Property**
**without Procedural Due Process of Law**
**(Against defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive)**

88.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 87, inclusive, as though set forth in full herein.

89.   As set  forth above, on January 27, 2020, pursuant to a call for service for suspected possible stolen mail, plaintiff and his friend were located in his

———————————————

[30] . . . and the omissions of DOES 4 through 6, inclusive.

COMPLAINT FOR DAMAGES

21

automobile near the scene of the subject of the call-for-service, by defendants Cody Weldin and Christopher Tomsic[31].

90.    Plaintiff and his friend were arrested, or otherwise caused to be arrested, by Torrance Police Department police officers, including defendants Cody Weldin and Christopher Tomsic and DOES 1 through 6, inclusive, for suspected conspiracy to steal U.S. Mail.

91.    Also as set forth above, plaintiff was taken to jail by Torrance Police Department police officers, and booked for those charges shown above, on January 27, 2020.

92.     Plaintiff was thereafter released from on January 28, 2020 from the Torrance City Jail, on a citation to appear in court on his arrest charges.

93.    Also as set forth above, on January 29, 2020, plaintiff[32] discovered that his 2004 Hyundai, Elantra, automobile, had been vandalized by someone spray-painting a Swastika on the back seat of his car, spray-painting a Happy Face on the front passenger seat of his car, and by seemingly randomly spray-painting blotches on the passenger side outside rear view mirror, and on the rear bumper of plaintiff's Hyundai.

94.    Also as set forth above, on October 2, 2021, plaintiff discovered that TOMSIC, WELDIN and DOES 1 through 6, inclusive vandalized his car.

95.    Also as set forth above, defendants TOMSIC's, WELDIN's and DOES 1 through 3's vandalizing of plaintiff's car was a meaningful interference with plaintiff's possessory and property rights in his car, while seizing the same pursuant to a police tow of plaintiff's car pursuant to his arrest.

_____

[31] . . . and DOES 1 through 6, inclusive.
[32] Along with plaintiff's father, Robert Swaine.

COMPLAINT FOR DAMAGES

96.   Moreover, DOES 4 through 6, inclusive, had an adequate opportunity, as well as the ability, to have intervened and to have stopped defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, from continuing to vandalize plaintiff's car, and, notwithstanding that knowledge and opportunity, just stood there and watched DOES 4 through 6, inclusive, vandalize plaintiff's car.

97.   Also as set forth above, defendants TOMSIC's, WELDIN's and DOES 1 through 3's vandalizing of plaintiff's car, and DOES 4 through 6, inclusive's failure to intervene to stop the same.

98.   Although procedures exist under California state law for the warrantless seizure of evidence, for the keeping and maintenance of evidence seized in the absence of a warrant, and, in some cases, for the destruction of seized evidence, defendants ignored and failed to follow any such California state law procedures regarding the seizure and destruction of property.

99.   Moreover, as set forth above, there was no legitimate law enforcement objective or purpose in defendants TOMSIC's, WELDIN's and DOES 1 through 3's vandalizing of plaintiff's car, and said defendants so vandalized plaintiff's car to advance the goals and objectives of that / those group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department, to wit; to terrorize the public in Torrance, California, that group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department run that town and its streets; a form of Neo-Nazi group chest-puffing / bragging, by officers who are drunk with their own power, and who despise and mistreat persons often despised and/or mistreated by society (i.e. Jews, blacks members of the LGBT community, and other non-white types.)

100.   Accordingly, said vandalizing of plaintiff's car by defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, constitutes and unreasonable seizure

of plaintiff's car, in the absence of procedural due process, under the Fourteenth Amendment to the United States Constitution.

101.    As a direct and proximate result of the actions of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, plaintiff has suffered: 1) damage to his car and the attendant costs of repairing the same, including lost wages, and 2) mental and emotional pain suffering and distress from the shock that Torrance police officers seemed to have threatened him with violence by painting a Swastika on his back seat, and otherwise from such "violation" of one's basic liberty interests, and from the shock to one when one is traumatically caused to realize that often, the persons entrusted with one's personal safety and security (the police), or more dangerous than the persons who they are supposed to be protected from by the police; all in an amount to be proven at trial in excess of $3,000,000.00.

102.   In addition to the above and foregoing, plaintiff shows that the actions of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, were done maliciously, oppressively and in reckless disregard of the plaintiff's constitutional rights; entitling plaintiff to punitive / exemplary damages in an amount to be proven at trial in excessive of $3,000,000.00.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth and Fourteenth Amendment Rights**
**Unlawful / Unreasonable Search and Seizure of Personal Property**
**Violation of Substantive Due Process of Law**
**(Against defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive)**

103.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 102, inclusive, as though set forth in full herein.

104.    As set forth above, on January 27, 2020, pursuant to a call for service for suspected possible stolen mail, plaintiff and his friend were located in his

automobile near the scene of the subject of the call-for-service, by defendants Cody Weldin and Christopher Tomsic[33].

105.    Plaintiff and his friend were arrested, or otherwise caused to be arrested, by Torrance Police Department police officers, including defendants Cody Weldin and Christopher Tomsic and DOES 1 through 6, inclusive, for suspected conspiracy to steal U.S. Mail.

106.    Also as set forth above, plaintiff was taken to jail by Torrance Police Department police officers[34], and booked for those charges shown above, on January 27, 2020.

107.    Plaintiff was thereafter released from on January 28, 2020 from the Torrance City Jail, on a citation to appear in court on his arrest charges.

108.    Also as set forth above, on January 29, 2020, plaintiff[35] discovered that his 2004 Hyundai, Elantra, automobile, had been vandalized by someone spray-painting a Swastika on the back seat of his car, spray-painting a Happy Face on the front passenger seat of his car, and by seemingly randomly spray-painting blotches on the passenger side outside rear view mirror, and on the rear bumper of plaintiff's Hyundai.

109.    On October 2, 2021, plaintiff discovered that TOMSIC, WELDIN and DOES 1 through 6, inclusive vandalized his car.

110.    TOMSIC's, WELDIN's and DOES 1 through 6, inclusive's, vandalization of plaintiff's car, described-above, constituted conduct that is shocking to the conscience, outrageous, and below that standard of conduct tolerated in a civilized society; such conduct being a violation of the substantive

—————————————

[33] . . . and DOES 1 through 6, inclusive.
[34] DOES 5 and 6.
[35] Along with plaintiff's father, Robert Swaine.

COMPLAINT FOR DAMAGES

due process restrictions on police officer conduct under the Fourteenth
Amendment to the United States Constitution.

111.    As a direct and proximate result of the actions of defendants TOMSIC,
WELDIN and DOES 1 through 3, inclusive, plaintiff has suffered: 1) damage to
his car and the attendant costs of repairing the same, including lost wages, and 2)
mental and emotional pain suffering and distress, from the shock that a Torrance
police officer seemed to have threatened him with painting a Swastika on his back
seat, otherwise from such "violation" of one's basic liberty interests, and from the
shock to one when one is traumatically caused to realize that often, the persons
entrusted with one's personal safety and security (the police), are often more
dangerous than the persons who they are supposed to be protected from by the
police; all in an amount to be proven at trial in excess of $3,000,000.00.

112.   In addition to the above and foregoing, plaintiff shows that the actions
of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, were done
maliciously, oppressively and in reckless disregard of the plaintiff's constitutional
rights; entitling plaintiff to punitive / exemplary damages in an amount to be
proven at trial in excessive of $3,000,000.00.

## FOURTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
**Violation of Fifth and Fourteenth Amendment Rights**
**Unlawful Taking of Personal Property Without Just Compensation / Without Due Process of the Law**
**(Against defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive)**

113.    Plaintiff hereby realleges and incorporates by reference the allegations
set forth in paragraphs 1 through 112, inclusive, as though set forth in full herein.

114.    As set forth above, on January 27, 2020, pursuant to a call for service
for suspected possible stolen mail, plaintiff and his friend were located in his
automobile near the scene of the subject of the call-for-service, by defendants
Cody Weldin and Christopher Tomsic.

COMPLAINT FOR DAMAGES
26

115.   Plaintiff and his friend were arrested, or otherwise caused to be arrested, by Torrance Police Department police officers, including defendants Cody Weldin and Christopher Tomsic and DOES 1 through 6, inclusive, for suspected conspiracy to steal U.S. Mail; a crime that plaintiff was innocent of.

116.   Also as set forth above, plaintiff was taken to jail by Torrance Police Department police officers, and booked for those charges shown above, on January 27, 2020.

117.   He was thereafter released from on January 28, 2020 from the Torrance City Jail, on a citation to appear in court on his arrest charges.

118.   Also as set forth above, on January 29, 2020, plaintiff[36] discovered that his 2004 Hyundai, Elantra, automobile, had been vandalized by someone spray-painting a Swastika on the back seat of his car, spray-painting a Happy Face on the front passenger seat of his car, and by seemingly randomly spray-painting blotches on the passenger side outside rear view mirror, and on the rear bumper of plaintiff's Hyundai.

119.   Also as set forth above, on October 2, 2021, plaintiff discovered that TOMSIC, WELDIN and DOES 1 through 6, inclusive vandalized his car.

120.   TOMSIC's, WELDIN's and DOES 1 through 6, inclusive's, vandalization of plaintiff's car, described-above, constituted conduct that is a taking of plaintiff's property without just compensation for the same; such conduct being a violation of plaintiff's right to be free from an unlawful taking of his property under the Fifth and Fourteenth Amendments to the United States Constitution.

121.   As a direct and proximate result of the actions of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, plaintiff has suffered: 1) damage to

─────────────────────

[36] Along with plaintiff's father, Robert Swaine.

his car and the attendant costs of repairing the same, including lost wages, and 2) mental and emotional pain suffering and distress from the shock that a Torrance police officer seemed to have threatened him with painting a Swastika on his back seat, otherwise from such "violation" of one's basic liberty interests, and from the shock to one when one is traumatically caused to realize that often, the persons entrusted with one's personal safety and security (the police), are often more dangerous to one, than the persons who they are supposed to be protected from by the police; all in an amount to be proven at trial in excess of $3,000,000.00.

122.    In addition to the above and foregoing, plaintiff shows that the actions of defendants TOMSIC, WELDIN and DOES 1 through 3, inclusive, were done maliciously, oppressively and in reckless disregard of the plaintiff's constitutional rights; entitling plaintiff to punitive / exemplary damages in an amount to be proven at trial in excessive of $3,000,000.00.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**MUNICIPAL LIABILITY [*MONELL LIABILITY*[37]]**
**Policy / *de facto* Policy, via Longstanding Customs and Practices of Police Agency for Creation and Maintenance of Neo-Nazi / White Supremacist Police Officer Group(s) / Gang(s) Terrorizing Public**
**(Against defendants CITY and DOES 7 through 10, inclusive)**

123.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 122, inclusive, as though set forth in full herein.

124.    As set forth above, on January 27, 2020, pursuant to a call for service for suspected possible stolen mail, plaintiff and his friend were located in his automobile near the scene of the subject of the call-for-service, by defendants Cody Weldin and Christopher Tomsic[38].

─────────────

[37] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).
[38] . . . and DOES 1 through 6, inclusive.

COMPLAINT FOR DAMAGES
28

125.    Plaintiff and his friend were arrested, or otherwise caused to be arrested, by Torrance Police Department police officers, including defendants Cody Weldin and Christopher Tomsic and DOES 1 through 6, inclusive, for suspected conspiracy to steal U.S. Mail.

126.    Also as set forth above, plaintiff was taken to jail by Torrance Police Department police officers[39], and booked for those charges shown above, on January 27, 2020. Plaintiff is innocent of, and was never prosecuted for those crimes.

127.    He was thereafter released from on January 28, 2020 from the Torrance City Jail, on a citation to appear in court on his arrest charges.

128.    Also as set forth above, on January 29, 2020, plaintiff[40] discovered that his 2004 Hyundai, Elantra, automobile, had been vandalized by someone spray-painting a Swastika on the back seat of his car, spray-painting a Happy Face on the front passenger seat of his car, and by seemingly randomly spray-painting blotches on the passenger side outside rear view mirror, and on the rear bumper of plaintiff's Hyundai.

129.    Also as set forth above, on October 2, 2021, plaintiff discovered that TOMSIC, WELDIN and DOES 1 through 6, inclusive vandalized his car.

130.    As shown above, defendants DOES 7 through 10, inclusive, are Supervisory personnel and/or policy making and/or final policy making officials for the Torrance Police Department / City of Torrance, employed by Torrance Police Department and defendant CITY (and/or some other Municipal entity), and were Certified California Peace Officers, Sworn Peace Officers of policy making ranks and authority, such as the Chief of Police and/or Assistant Chief(s) and/or

_____

[39] DOES 5 and 6.
[40] Along with plaintiff's father, Robert Swaine.

Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by Torrance Police Department and defendant CITY (and/or some other Municipal entity), who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as via major policy making decisions on personnel matters, including:

1)     The longstanding knowing tolerance of and condoning by CITY and DOES 7 through 10, inclusive[41], of murders and other forms of homicide by Torrance Police Department police officers of innocents[42] (some being racially motivated, and some not), as well as the knowing widespread tolerance of and condoning of frequent police beatings and false arrests of innocents by Torrance Police Department police officers, and of other California state criminal, and federal and state constitutional violations[43], including defendants Christopher Tomsic and Scott Weldin and DOES 1 through 6, inclusive;

2)     The longstanding custom and practice of CITY and DOES 7 through 10, inclusive[44], by ignoring frequent complaints made by civilians against violating Torrance police officers, including the murders, beatings

---

[41] Such as by failing to investigate, or even by failing to take a complaint report, or to even discourage civilians from making any such personnel complaints; especially those complaints by non-white civilians that they were subjected to demeaning traffic stops by Torrance Police Department police officers, for conduct such as driving an expensive car in a predominantly white / upscale neighborhood.

[42] Including criminal federal constitutional violations under 18 U.S.C. § 242.

[43] Some of these Torrance Police Department beatings of innocents, misdemeanants, the homeless, and the defenseless, not being racially motivated, and some being racially motivated, and, also, to advance the goals of, and for the benefit of the / a White Supremacist / Neo-Nazi group(s) / gang(s) of Torrance Police Department police officers.

[44] Such as by failing to investigate, or even by failing to take a complaint, report, or to even discourage civilians from making any such personnel complaints.

COMPLAINT FOR DAMAGES

and false arrests referenced immediately above, including and especially racially motivated traffic and pedestrian stops of innocents non-white persons, and by either failing to investigate them at all, or, by investigating said complaints in a manner seeking only to reach a pre-determined conclusion, that the civilian complaints were without merit, and that the Torrance Police Department police officer was "in the right", and the complaining civilian was "in the wrong"[45];

3)      The longstanding custom and practice of CITY and DOES 7 through 10, inclusive[46], of knowingly tolerating Neo-Nazi / White Supremacist gangs / groups of Torrance Police Department police officers, who individually and in concert, and as a group / gang actually discuss with each other, on-duty, how much they despise and hate Jews, black persons of African descent, members of the LGBT community and assorted other identifiable groups of persons who are often typically scapegoated for society's problems, and who often are the targets of hate, ridicule and oppressive police behavior, and who are otherwise looked-down-upon by members of the law enforcement community, patroling the streets of Torrance;

131.   These *de facto* policies of the Torrance Police Department exist because notwithstanding complaints to said defendants about, and notwithstanding actual knowledge of these White Supremacist / Neo-Nazi group(s) / gang(s) existence and their acts of terror and oppressive conduct against blacks, LGBT

---

[45] From 2016 to 2019, Torrance police upheld just three citizen allegations of police misconduct and zero allegations of racial profiling made against officers, according to data submitted to the California attorney general's office. Katz, the former independent police auditor, described those statistics as "concerningly low."

[46] Such as by failing to investigate, or even by failing to take a complaint report, or to even discourage civilians from making any such personnel complaints.

COMPLAINT FOR DAMAGES

31

members and others, defendants DOES 7 through 10, inclusive, failed to discipline and stop these White Supremacist / Neo-Nazi group(s) / gang(s), by disciplining and/or firing them from their employment with the Torrance Police Department.

132.   Defendants TOMSIC's, WELDIN's and DOES 1 through 6's vandalizing of plaintiff's car, was in large part done to advance the goals and objectives of that / those group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department, to wit; to terrorize the public in Torrance, California, that group(s) / gang(s) of White Supremacist / Neo-Nazi police officers within the Torrance Police Department run that town and its streets; a form of Neo-Nazi group chest-puffing and bragging, by officers who are drunk with their own power, and who despise and mistreat those types / groups of persons who are often mistreated by society (i.e. Jews, blacks, members of the LGBT community, and other non-white types.)

133.      Accordingly, said vandalizing of plaintiff's car by defendants TOMSIC, WELDIN and DOES 1 through 6, inclusive, was proximately caused by said policies / *de facto* policies of the Torrance Police Department, above-described, making CITY and DOES 7 through 10, inclusive, liable for all of the plaintiff's claims, via 42 U.S.C. § 1983 in his First, Second, Third and Fourth Causes of Action shown above.

134.   Accordingly, as a direct and proximate result of the actions of defendants CITY and DOES 7 through 10, inclusive, plaintiff has suffered: 1) damage to his car and the attendant costs of repairing the same, including lost wages, and 2) mental and emotional pain suffering and distress, from the shock that a Torrance police officer seemed to have threatened him with painting a Swastika on his back seat, otherwise from such "violation" of one's basic liberty interests, and from the shock to one when one is traumatically caused to realize that often, the persons entrusted with one's personal safety and security (the police),

are more dangerous to one than the persons who they are supposed to be protected from by the police; all in an amount to be proven at trial in excess of $3,000,000.00.

135.   In addition to the above and foregoing, plaintiff shows that the actions of defendants DOES 7 through 10, inclusive, were done maliciously, oppressively and in reckless disregard of the plaintiff's constitutional rights; entitling plaintiff to punitive / exemplary damages against said defendants, save defendant CITY, in an amount to be proven at trial in excessive of $3,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

    a)  For a judgment against all defendants for compensatory damages in an amount in excess of $3,000,000.00;

    b)  For a judgment against all defendants, save defendant CITY, for punitive damages in an amount in excess of $3,000,000.00;

    c)  For an award of reasonable attorney's fees and costs;

    d)  For a trial by jury; and

    e)  For such other and further relief as this honorable court deems just and equitable.

_____

JERRY L. STEERING, ATTORNEY FOR
PLAINTIFF KILEY SWAINE