**Louis J. Esbin, Esq. (Cal Bar 119705)**
**LAW OFFICES OF LOUIS J. ESBIN**
**27451 Tourney Road, Suite 120, Valencia, California 91355**
**Tel: 661.254.5050 | Fax: 661.254.5252 | Email: Louis@Esbinlaw.com**

**Richard A. Marcus, Esq. (Cal Bar No. 183140)**
**LAW OFFICES OF RICHARD A. MARCUS**
**28494 Westinghouse Place, Suite 206, Valencia, CA 91355**
**P: 661-257-8877 | F: 661-775-9423 | Email: Richard@attorneyrichardmarcus.com**

Attorneys for Defendants, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KILEY DELIEFDE SWAINE, | Case No. 2:22-cv-00404-MCS-RAO |
| Plaintiff, | |
| vs. | NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT. |
| CITY OF TORRANCE, CODY WELDIN, CHRISTOPHER TOMSIC, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN and DOES 1 through 10, inclusive, | |
| Defendants. | Date: August 29, 2022 Time: 9:00 am Place: Courtroom 7C United States Courthouse 350 W. 1st Street, 6th Floor Los Angeles, CA 90012 |

TO THE HONORABLE MARK C. SCARSI, UNITED STATES DISTRICT JUDGE, PARTIES IN INTEREST AND COUNSEL OF RECORD:

**NOTICE IS GIVEN** that on August 29, 2022, at 9:00 am, or as soon thereafter as the motion may be heard, in Courtroom 7C of this Court located at the United States Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendants, VAN

LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN (collectively, "Defendants" and each a "Defendant"), by and through counsel, Louis J. Esbin, Esq., of the Law Offices of Louis J. Esbin, and Richard A. Marcus, Esq., of the Law Offices of Richard A. Marcus (collectively, "Counsel of Record") do respectfully submit to the Court and parties in interest this NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT ("Motion"), upon the grounds set forth herein, in the accompanying Memorandum of Authorities, the Declaration of Robert Van Lingen, upon oral argument made at the time of the hearing on the Motion, and upon the grounds that allegations of the First Amended Complaint in support of the Sixth Claim for Relief alleged against Defendants, and each of them, arise out of Defendants' exercise of their right to free speech under the California and Federal Constitutions and more particularly under California Code of Civil Procedure §§ 425.16(e)(1) and (e)(2), and California Civil Code § 47(b), such that it is not Plaintiff's Sixth Claim for Relief is not a claim upon which relief can be granted and, therefore, under Fed.R.Civ.P. Rule 12(b)(6), Defendants, and each of them, must be dismissed with prejudice.[1]

---

[1] Plaintiff sought to amend the First Amended Complaint with a proposed Second Amended Complaint; however, the *ex parte* application was denied by the Court. There are no changes in the allegations against Defendants as alleged in the First Amended Complaint as compared to the proposed Second Amended Complaint. Therefore, these Defendants must be dismissed with prejudice.

**NOTICE IS FURTHER GIVEN** that in accordance with California Code of Civil Procedure §425.16(c), if successful, Defendants will be seeking an award of their attorney fees and costs incurred in making the instant Motion. See, <u>American Humane Assoc. v. LA Times Communications</u>, 92 Cal. App. 4th 1095 (2001).

**NOTICE IS FURTHER GIVEN** that this Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 6, 2022, from which a Defendants proposed the parties enter into a Stipulation Between Plaintiff and Certain Defendants to Amend Order Setting Scheduling Conference and to Continue Hearing on Motion to Dismiss. Plaintiff rejected the offer.

**NOTICE IS FURTHER GIVEN** that under the L.R. 7-8, any response in opposition to this Motion must be filed with the Court and served on parties in interest not later than ten (10) days after service of the Motion and not later than twenty-one (21) days before the date designated for the hearing of the Motion, the failure of which may result in the Court entering an order granting this Motion without further need for oral argument, as any opposition will have been waived.

**WHEREFORE**, Defendants respectfully request this Court grant this Motion and the relief requested therein by entering an appropriate Order based thereon lodged concurrently herewith.

Dated: July 20, 2022

LAW OFFICES OF LOUIS J. ESBIN

/s/ Louis J. Esbin

LOUIS J. ESBIN, ESQ.
Attorneys Defendants, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN

# **TABLE OF CONTENTS**

A.   INTRODUCTION ........................................................................... 10

B.   PROCEDURAL BACKGROUND AND FACTUAL BACKGROUND ................................. 10

C.   ARGUMENT ................................................................................. 14

  1. CALIFORNIA'S ANTI-SLAPP STATUTE COMPELS THAT THE SIXTH CLAIM FOR
RELIEF SHOULD BE DISMISSED. .............................................................. 14

  2. THE NINTH CIRCUIT HAS UPHELD APPLICATION OF ANTI-SLAPP MOTIONS IN
FEDERAL COURT. ............................................................................... 16

  3. THE ANTI-SLAPP STATUTE APPLIES TO ACTIONS THAT ARE BASED ON
SETTLEMENT NEGOTIATIONS. ............................................................... 17

  4. SETTLEMENT NEGOTIATIONS PRECEDING THE FILING OF A SUIT AND
ALLEGATIONS OF FRAUD DURING THEIR NEGOTIATION ARE ALSO CONSIDERED
PROTECTED ACTIVITY. ......................................................................... 20

  5. ONCE DEFENDANTS MAKES THEIR PRIMA FACIE SHOWING, PLAINTIFF MUST
ESTABLISH A PROBABILITY THAT PLAINTIFF WILL PREVAIL. ............................. 22

  6. CIVIL CODE SECTION 47(B) DEFINES THE LITIGATION PRIVILEGE. ................... 23

  7. COMMUNICATIONS "WITHIN THE PROTECTION OF THE LITIGATION PRIVILEGE" ARE
EQUALLY ENTITLED TO THE BENEFITS OF SECTION 425.16. ............................. 24

  8. BECAUSE DEFENDANTS' ACTIONS ARE PROTECTED BY THE LITIGATION
PRIVILEGE, PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON
THE MERITS. ..................................................................................... 26

  9. EVEN IF THE LITIGATION PRIVILEGE IS NOT APPLICABLE, PLAINTIFF CANNOT
ESTABLISH A PROBABILITY OF PREVAILING BECAUSE THE GENERAL RELEASE BARS
HIS CLAIMS. ..................................................................................... 28

10. EVEN IF THE LITIGATION PRIVILEGE IS NOT APPLICABLE, PLAINTIFF CANNOT ESTABLISH A PROBABILITY OR PREVAILING BECAUSE THE MOVING DEFENDANTS DID NOT CONSPIRE, ENGAGE IN ANY FRAUD, OR MAKE ANY INTENTIONAL MISREPRESENTATIONS.................................................................................... 29

11. AN AWARD OF ATTORNEY FEES IS AS A MATTER OF STATE LAW. ......................... 31

D.   CONCLUSION................................................................................................. 31

DECLARATION OF ROBERT VAN LINGEN ......................................................... 33

DECLARATION OF ERICK MARTIN DEL CAMPO................................................. 41

DECLARATION OF LOUIS J. ESBIN ................................................................... 44

# **TABLE OF AUTHORITIES**

**Cases**

Adams v. Superior Court, 2 Cal.App.4th 521, 529 (1992) ...................................26

American Humane Assoc. v. LA Times Communications, 92 Cal. App. 4th 1095 (2001) ........................................................................................................................31

Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc., 164 Cal.App.4th 1108, 1118 (2008)........................................................................................................20

Baral v. Schnitt (Baral), 1 Cal.5th 379, 384 (2016) ............................................16

Beeman v. Anthem Prescription Management, LLC, 58 Cal.4th 329, 342 (2013) ..........19

Bergstein v Stroock & Stroock & Lavan LLP, 236 Cal. App.4th 793, 803 (2015)............18

Bonni v. St. Joseph Health System (Bonni), 11 Cal.5th 995, 1024 (2021)................20, 21

Briggs v Eden Council for Hope & Opportunity (Briggs), 19 Cal.4th 1106, 1115 (1999) ........................................................................................................18, 21, 24

Burrill v. Nair, 217 Cal.App.4th 357, 378–379 (2013) .........................................16

Casey v. Proctor (Casey), 59 Cal.2d 97, 109 (1963)......................................28, 29

Chavez v. Mendoza, 94 Cal.App.4th 1083, 1087 (2001) ....................................23, 24

Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir.2008).......................................31

City of Cotati v. Cashman, 29 Cal.4th 69, 78 (2002).........................................15

Coastal States Marketing, Inc. v. Hunt, 694 F.2d 1358, 1367 (5th Cir. 1983) ...............21

Contreras v. Dowling, 5 Cal.App.5th 394, 408 (2016) ........................................15

Doctors' Co. Ins. Servs. v. Superior Court, 225 Cal.App.3d 1284, 1294 (1990) ............26

Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal.App.4th 777 (1996)..........25, 26

Dowling v. Zimmerman (Dowling), 85 Cal.App.4th 1400, 1418–1420 (2001)............20, 22

Flatley v. Mauro (Flatley), 39 Cal.4th 299, 323 (2006) ...................................25, 26

Gallanis-Politis v. Medina, 152 Cal.App.4th 600, 615 (2007)..................................25

GeneThera, Inc. v. Troy & Gould Professional Corp. (GeneThera), 171 Cal.App.4th 901, 907–908 (2009) ........................................................................................17, 18

Gerawan Farming, Inc. v. Lyons, 24 Cal.4th 468, 491 (2000)..................................19

<u>Globetrotter Software v. Elan Computer Group, Inc.</u>, 362 F.3d 1367, 1376 (Fed.Cir. 2004).................................................................................................................22

<u>Globetrotter Software, Inc. v. Elan Computer Group, Inc.</u>, 63 F.Supp.2d 1127, 1129–1130 (ND CA 1999) .............................................................................................17

<u>Governor Gray Davis Com. v. American Taxpayers Alliance</u>, 102 Cal.App.4th 449, 456 (2002) .....................................................................................................15, 16

<u>Healy v. Tuscany Hills Landscape & Recreation Corp.</u>, 137 Cal.App.4th 1, 5 (2006)....25

<u>Home Ins. Co. v. Zurich Ins. Co.</u>, 96 Cal.App.4th 17, 23 (2002)........................................27

<u>In re Bah</u>, 321 BR 41, 46 (9th Cir. BAP 2005) ....................................................................17

<u>In re IBP Confidential Business Documents Lit.</u>, 755 F.2d 1300, 1310 (8th Cir. 1985).21

IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir.2010) ...........................31

<u>Kajima Eng. & Const., Inc. v. City of Los Angeles</u>, 95 Cal.App.4th 921, 929 (2002).....14

<u>Karnazes v. Ares (Karnaves)</u>, 244 Cal.App.4th 344, 353 (2016)...........................15, 19, 22

<u>Kashian v. Harriman (Kashian)</u>, 98 Cal.App.4th 892, 908 (2002)................................25, 26

<u>Kolar v. Donahue McIntosh & Hammerton</u>, 145 Cal.App.4th 1532, 1537 (2006)............25

<u>Kreeger v. Wanland</u>, 141 Cal.App.4th 826, 831 (2006) .....................................................16

<u>Leaf v. City of San Mateo (Leaf)</u>, 104 Cal.App.3d 398, 411 (1980) ................................29

<u>McGuire Oil Co. v. Mapco, Inc.</u>, 958 F.2d 1552, 1560 (11th Cir. 1992)...........................22

<u>Mundy v. Lenc</u>, 203 Cal.App.4th 1401, 408–1409 (2012) ..................................................17

N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir.1988) .........................31

<u>Navarro v. IHOP Properties, Inc. (Navarro)</u>, 134 Cal.App.4th 834, 841–842 (2005) 20, 22

<u>Navellier v. Sletten (Navellier)</u>, 29 Cal.4th 82, 90 (2002).............................................passim

<u>NCAA Student–Athlete Name & Likeness Licensing Litig. v. Elec. Arts Inc.</u>, 724 F.3d 1268, 1272 (9th Cir. 2013)....................................................................................14, 17

<u>Northon v.  Rule</u>, 637 F.3d 937, 938 (9th Cir. 2011)....................................................17, 31

<u>O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC</u>, 42 Cal. App.5th 546, 565–574 (2019) ............................................................................................................20

<u>Premier Med. Mgt. Systems, Inc. v. California Ins. Guar. Ass'n</u>, 136 Cal.App.4th 464, 472 (2006)..................................................................................................................23

<u>Ruiz v. Harbor View Community Assn.</u>, 134 Cal.App.4th 1456, 1467 (2005)..................24

<u>Rusheen v. Cohen (Rusheen)</u>, 37 Cal.4th 1048, 1056 (2006).....................................14, 25

<u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d 1273, 1280 (10th Cir.2011) ..............................31

<u>Seltzer v Barnes (Seltzer)</u>, 182 Cal.App.4th 953, 963–969 (2010) .............................18, 27

<u>Silberg v. Anderson</u>, 50 Cal.3d 205, 212 (1990) ................................................................23

<u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 932 (9th Cir. 2006)................................................21

<u>Soukup v. Law Offices of Herbert Hafif (Soukup)</u>, 39 Cal.4th 260, 291 (2006) .........20, 23

<u>Suarez v. Trigg Laboratories, Inc. (Suarez)</u>, 3 Cal.App.5th 118, 123–125 (2016) ....18, 19

<u>Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.</u>, 122 Cal.App.4th 1049, 1058 (2004)........................................................................................................................24

<u>Takhar v. People ex rel. Feather River Air Quality Management Dist.</u>, 27 Cal.App.5th 15, 28–29 (2018)...................................................................................................................22

<u>Thayer v. Kabateck Brown Kellner LLP</u>, 207 Cal.App.4th 141, 154 (2012) ....................17

Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 273 (1st Cir.1990).......31

<u>United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.</u>, 190 F3d 963, 973 (9th Cir. 1999)...........................................................................................................17

<u>Volkswagen Grp. of Am., Inc. v. Peter J. McNulty Law Firm</u>, 692 F.3d 4, 15 (1st Cir. 2012)...............................................................................................................................31

**Statutes**

Cal.C.Civ.P. § 425.16(b)....................................................................................................22

Cal.C.Civ.P. § 425.16(e)(2) .........................................................................................passim

Cal.C.Civ.P. § 425.16(h)....................................................................................................14

Cal.C.Civ.P. §425.16(c).....................................................................................................31

Cal.C.Civ.P. 425.16 ...........................................................................................14, 18, 19, 20

Cal.Civ.C. § 1542.........................................................................................................28, 29

Cal.Civ.C. § 47(b) ......................................................................................................passim

Cal.Civ.Proc.Code § 425.16(b)(1) ..............................................................................14, 24

California Code of Civil Procedure §§ 425.16(e)(1)........................................10, 14, 24, 25

**Other Authorities**

Anderson, *Please Release Me, Let Me Go! Releases of Unknown Claims in the Penumbra of California Civil Code Section 1542* (Please Release Me) 9 U.C. Davis Bus. L.J. 1, 3 (2008) .................................................................................... 28, 29

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     INTRODUCTION**

This Memorandum of Points and Authorities is respectfully submitted by Defendants, Robert Van Lingen, Individually, Van Lingen Body Shop, Inc. dba Van Lingen Towing, and Van Lingen Towing, Inc., in support of their SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD. The Sixth Claim for Relief is based upon statements or writings made before the Court and statements or writings made in connection with an issue under consideration or review by the Court, which are protected speech California Code of Civil Procedure §§ 425.16(e)(1) and (e)(2), and California Civil Code § 47(b). [2]  Even if the Court were to find Cal.Civ.C. § 47(b) not applicable, the Court must consider that Plaintiff executed a release in settlement with Defendants and Plaintiff does not allege Defendants made any fraudulent misrepresentations with regard to the settlement Plaintiff entered into with them.

**B.     PROCEDURAL BACKGROUND AND FACTUAL BACKGROUND**

Plaintiff sued Robert Van Lingen individually, as well as Van Lingen Body Shop, Inc. and Van Lingen Towing, Inc., claiming the two companies were his alter egos. Van Lingen Towing, Inc. (a true copy of the California Secretary of State filing is attached and incorporated by reference as "**Exhibit 1.**" See, Declaration of Van Lingen ("Van Lingen Decl.") ¶3) is a separate corporate entity from Van Lingen Body Shop, Inc. A true copy of the California Secretary of State filing is attached and incorporated by

---

[2] The California Code of Civil Procedure will be referred to as the "Cal.C.Civ.P." and the California Civil Code will be referred to as the "Cal.Civ.C."

reference as "**Exhibit 2.**" <u>See</u>, Van Lingen Decl. ¶4. Van Lingen Towing, Inc., has not been involved in doing any business of any kind for at least the last 20 years. <u>See</u>, Van Lingen Decl., ¶5. It has no employees, does not make any sales, and does not conduct any business activities. Although the company remains "in good standing" with the California Secretary of State the company itself is not related to the business of Van Lingen Body Shop, Inc. dba Van Lingen Towing. <u>See</u>, Van Lingen Decl. ¶5. Robert Van Lingen is the CEO of Defendant Van Lingen Body Shop, Inc. dba Van Lingen Towing. A true copy of its fictitious business name filing with the County of Los Angeles is attached and incorporated by reference as "**Exhibit 3.**" <u>See</u>, Van Lingen Decl. ¶6.

Plaintiff alleges the two companies and Mr. Van Lingen, individually, conspired with the other defendants to hide the actions of vandalism of "one or more Torrance Police Department / White Supremacist / Neo-Nazi group(s) / police officer gang(s)" by falsely misrepresenting that the towing company was responsible for the damage to plaintiff's vehicle. <u>See</u>, FAC ¶¶181-184.

On or about February 27, 2020, Plaintiff signed a general release (the "<u>Release</u>") (a true copy of which is attached and incorporated by reference as "**Exhibit 4.**" <u>See</u>, Van Lingen Decl. ¶8), releasing Van Lingen Towing and its "agents, servants, successors, heirs, executors, administrators, successors and assigns…" from all actions, damages, in any way, directly or indirectly connected with or arising out of "… spray paint damage of interior and exterior portions of 2004 Hyundai Elantra." In consideration for the Release, Plaintiff received a check the amount of $2,250.00 dated February 27, 2020, which Plaintiff accepted in full payment for all damages caused by

the vandalism to his vehicle. A true and correct copy of the check in the amount of $2,250 is attached and incorporated as "**Exhibit 5.**" See, Van Lingen Decl., ¶9.

Defendants are now being sued for $3 million in compensatory damages and another $3 million in punitive damages (See, FAC ¶¶206 - 207).

The entire involvement of Mr. Van Lingen, individually, and Van Lingen Body Shop, Inc. dba Van Lingen Towing, was to settle a dispute regarding vandalism to Plaintiff's car at a time where both the Plaintiff and Mr. Van Lingen reasonably believed the vandalism took place while the car was at the Van Lingen Towing lot. Plaintiff first noticed the damage when he picked up the vehicle from the yard, after paying the impound charges. It is critical that at the time of settlement, Plaintiff believed and in fact asserted that the vehicle was damaged after it was towed to Defendant's facility. Erick Del Campo, the day manager at Van Lingen Towing, was present when Plaintiff came to retrieve his vehicle. See, Declaration of Erick Del Campo ¶4. The tow truck driver (Mr. Dunn) told him (Mr. Del Campo) the damage occurred to the vehicle before the vehicle was picked up for towing to the Van Lingen facility. The tow truck driver took eight digital photos after the vehicle had been unloaded from the tow truck. Based upon Mr. Van Lingen's review of the still photos, it was not apparent any vandalism had taken place, since Plaintiff's complaint of damage at the time was to the interior of the vehicle. Mr. Van Lingen keeps video surveillance equipment and tapes in his corporate office. The video footage did not provide any further clarity of when the damage first occurred. In connection with each impounded vehicle, the police department generates a "CHP 180 Vehicle Condition Report." Mr. Van Lingen reviewed the report which confirmed no damage was reported to the vehicle at the time it was impounded. See,

Van Lingen Decl., ¶¶31-32. Mr. Van Lingen had no reason to believe the report was false or inaccurate.

The report, together with the customer (Plaintiff) himself, insisted there was no damage to the vehicle prior to the time it was impounded. Based upon the strong evidence in the report corroborated by the Plaintiff himself and the photographs, Mr. Van Lingen made a reasoned business judgment decision to accept responsibility for the damage. He contacted Plaintiff and offered to have the vehicle repaired back to pre-claim condition. Plaintiff wanted to have his own shop do the work and provided two estimates. True and correct copies of the shop estimates provided by Plaintiff to Defendants are attached and incorporated as "**Exhibits 6 and 7.**" See, Van Lingen Decl., ¶38.) Using Kelley Blue Book and Auto Trader.com, Mr. Van Lingen did a market valuation of like kind and quality vehicles and determined the value to be NO MORE than $2,500.00.

The two repair estimates exceeded the actual cash value of the vehicle, rendering the damage to the vehicle a total loss. Negotiations ensued and on February 27, 2020, Plaintiff came to Defendants' facility, signed the Release, and accepted the $2,250 check as payment in full.

At no time did any of the Defendants ever make any false representations about who caused the vandalism or conspire with Torrance Police Officers Welden or Tomsic. At no time has Plaintiff taken any action to rescind the Release he signed or return the $2,250.00, which given the value of the vehicle he received as the reasonable value of his total loss.

///

## C.   ARGUMENT

### 1. CALIFORNIA'S ANTI-SLAPP STATUTE COMPELLS THAT THE SIXTH CLAIM FOR RELIEF SHOULD BE DISMISSED.

The anti-SLAPP[3] statute applies to causes of action "arising from any act . . . in furtherance of (a) person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal.C.Civ.P. § 425.16(b)(1). The cause of action may appear in either a complaint, petition, or cross-complaint. Cal.C.Civ.P. § 425.16(h); <u>Kajima Eng. & Const., Inc. v. City of Los Angeles</u>, 95 Cal.App.4th 921, 929 (2002).

The moving party's burden at step one is to show "***the challenged cause of action arises from protected activity [emphasis added].***" <u>Rusheen v. Cohen</u> <u>(Rusheen)</u>, 37 Cal.4th 1048, 1056 (2006). "[T]he statutory phrase 'cause of action ... arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act

---

[3] A complaint brought as a strategic lawsuit against public participation is referred to under Cal.C.Civ.P. 425.16 as a "SLAPP" and the special motion brought in response is referred to as an Anti-SLAPP motion. "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. Cal.Civ.Proc.Code § 425.16(b)(1)." <u>NCAA Student–Athlete Name & Likeness Licensing Litig. v. Elec. Arts Inc. (NCAA)</u>, 724 F.3d 1268, 1272 (9th Cir. 2013)

underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e).'" <u>City of Cotati v. Cashman</u>, 29 Cal.4th 69, 78 (2002).

"[i]n deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" <u>City of Cotati v. Cashman</u>, supra, 29 Cal.4th at 79. Thus, we are "not limited to examining the allegations of the complaint alone but rather consider the pleadings and the factual material submitted in connection with the special motion to strike." <u>Contreras v. Dowling</u>, 5 Cal.App.5th 394, 408 (2016); see also, <u>Karnazes v. Ares (Karnaves)</u>, 244 Cal.App.4th 344, 353 (2016) [considering pleadings plus declaration and emails for step one]; <u>Navellier v. Sletten (Navellier)</u>, 29 Cal.4th 82, 90 (2002) [examining "relevant documents" to find acts complained of fall within anti-SLAPP statute].

A defendant's burden on the first prong is not an onerous one. A defendant need only make prima facie showings that plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights. (See, <u>Governor Gray Davis Com. v. American Taxpayers Alliance</u>, 102 Cal.App.4th 449, 456 (2002). "'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law.' [Citation.] 'Instead, under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. [Citation.] Otherwise, the second

step would become superfluous in almost every case, resulting in an improper shifting of the burdens.'" Id. at p. 458.

"If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." Baral v. Schnitt (Baral), 1 Cal.5th 379, 384 (2016). The plaintiff must do so with admissible evidence. Kreeger v. Wanland, 141 Cal.App.4th 826, 831 (2006). "We decide this step of the analysis 'on consideration of the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b).) Looking at those affidavits, [w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff.'" Burrill v. Nair, 217 Cal.App.4th 357, 378–379 (2013).

This second step has been described as a "'summary-judgment-like procedure.'" Baral, supra, 1 Cal.5th at 384. A court's second step "inquiry is limited to whether the [opposing party] has stated a legally sufficient claim and made prima facie factual showings sufficient to sustain a favorable judgment. [The court] ... evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (Id. at 384–385). "Only a [claim] that satisfies both prongs of the Anti-SLAPP statute— i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." Navellier, supra, 29 Cal.4th at 89.

## 2. THE NINTH CIRCUIT HAS UPHELD APPLICATION OF ANTI-SLAPP MOTIONS IN FEDERAL COURT.

Most courts have held state Anti-SLAPP laws will be given effect in federal diversity actions because these state procedures are designed to further a substantive objective (i.e., reducing meritless lawsuits). In re NCAA Student-Athlete Name & Likeness

Licensing Litig., supra, 724 F.3d at 1272 ("We have determined that the [California] Anti-SLAPP statute is available in federal court.") "Anti–SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation. (Citations omitted)." Northon v. Rule, 637 F.3d 937, 938 (9th Cir. 2011).

State Anti-SLAPP rules apply to pendent (supplemental) state law claims. Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F.Supp.2d 1127, 1129-1130 (ND CA 1999); see In re Bah, 321 BR 41, 46 (9th Cir. BAP 2005). "Plainly, if the Anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F3d 963, 973 (9th Cir. 1999).

As discussed throughout this Memorandum, Plaintiff's Sixth Claim for Relief falls within the purview of California's Anti-SLAPP statute and, therefore, the Sixth Claim for relief (against Defendants) must be stricken and Defendants dismissed with prejudice.

### 3. THE ANTI-SLAPP STATUTE APPLIES TO ACTIONS THAT ARE BASED ON SETTLEMENT NEGOTIATIONS.

The Anti-SLAPP statute applies to actions that are based on settlement negotiations and agreements connected to litigation. GeneThera, Inc. v. Troy & Gould Professional Corp. (GeneThera), 171 Cal.App.4th 901, 907–908 (2009); Mundy v. Lenc, 203 Cal.App.4th 1401, 408–1409 (2012); [action based on the breach of a settlement agreement was protected by the Anti-SLAPP statute]; Thayer v. Kabateck Brown Kellner LLP, 207 Cal.App.4th 141, 154 (2012); Suarez v. Trigg Laboratories, Inc.

(Suarez), 3 Cal.App.5th 118, 123–125 (2016) (action based on the non-disclosure of information during the course of a litigation).

Communications in connection with matters related to a lawsuit generally are privileged under Cal.Civ.C. § 47(b), and the communications within the protection of this litigation privilege are also entitled to the benefits of Cal.C.Civ.P. § 425.16. Briggs v Eden Council for Hope & Opportunity (Briggs), 19 Cal.4th 1106, 1115 (1999); Bergstein v Stroock & Stroock & Lavan LLP, 236 Cal. App.4th 793, 803 (2015).

In a tort action arising from an allegedly unethical settlement offer in a prior action, the making of a settlement offer was found to be a protected activity, and there was no probability the plaintiff could prevail because the offer fell within the absolute litigation privilege of Cal.Civ.C. § 47(b), regardless of whether any unprofessional conduct occurred. GeneThera, supra, 171 Cal.App.4th at 906–910; See, Suarez, supra, 3 Cal.App.5th at 123 (communications in course of settlement negotiations are protected activity and this protection applies even against allegations of fraudulent promises made during settlement process); Seltzer v Barnes (Seltzer), 182 Cal.App.4th 953, 963–969 (2010) (settlement negotiations are exercise of right to petition, and statements made as part of these negotiations are in connection with underlying lawsuit for purposes of Cal.C.Civ.P. § 425.16(e)(2)).

Because settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of Cal.C.Civ.P. § 425.16(e)(2). Seltzer, supra, 182 Cal.App.4th at 963–964. The protection of the Anti-SLAPP statute

applies "even against allegations of fraudulent promises made during the settlement process." Suarez, supra, 3 Cal.App.5th at 123.

Anti-SLAPP protection applies to a defendant's communications made in preparation or in anticipation of bringing a legal action. Communications in connection with anticipated litigation are considered "under consideration or review by a... judicial body" and, therefore, entitled to Anti-SLAPP protection under Cal.C.Civ.P. § 425.16(e)(2). Karnazes, supra, 244 Cal.App.4th at 351–352 (email communications between parties occurred within context of Anticipated litigation and settlement).

In Navellier, defendant allegedly failed to disclose he was secretly not in agreement with the terms of the release, which induced plaintiffs to file an amended federal action; defendant then claimed he did not release and did not intend to release his claims. The California Supreme Court found each of defendant's "acts or (omissions) ... falls squarely within the plain language of the Anti-SLAPP statute." Navellier, supra, 29 Cal.4th at 90.

Misrepresentation or failure to disclose can be protected petitioning activity for purposes of Cal.C.Civ.P. § 425.16. This is consistent with established free speech jurisprudence. The right to freedom of speech under the First Amendment to the United States Constitution and under Article I, section 2 of the California Constitution, encompasses what a speaker chooses to say, and what a speaker chooses not to say; it is a right to speak freely and, also, a right to refrain from doing so at all. Beeman v. Anthem Prescription Management, LLC, 58 Cal.4th 329, 342 (2013); Gerawan Farming, Inc. v. Lyons, 24 Cal.4th 468, 491 (2000).

In <u>Navarro v. IHOP Properties, Inc. (Navarro)</u>, 134 Cal.App.4th 834, 841–842 (2005) the plaintiff alleged the defendant made fraudulent promises in exchange for a stipulation of judgment in an earlier unlawful detainer action. The California Court of Appeal followed <u>Navellier</u> in holding the case before it, "concerning allegedly fraudulent statements within the context of negotiating the stipulated judgment," was within the scope of Cal.C.Civ.P. § 425.16. <u>Navarro</u>, supra, 134 Cal.App.4th at 842.

The <u>Navarro</u> court also cited to <u>Dowling v. Zimmerman (Dowling)</u>, 85 Cal.App.4th 1400, 1418–1420 (2001), where the court held a claim for misrepresentation, arising from the defendant's negotiation of a stipulated settlement of an unlawful detainer action was within the scope of Cal.C.Civ.P. § 425.16(e)(2). See also, <u>Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.</u>, 164 Cal.App.4th 1108, 1118 (2008) (entering into a settlement agreement is protected activity).

So too in <u>O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC</u>, 42 Cal. App.5th 546, 565–574 (2019), where the court found an action based on allegedly wrongful conduct in the settlement of litigation and the disbursement of settlement proceeds was Anti-SLAPP protected under Cal.C.Civ.P. § 425.16(e)(2).

**4. SETTLEMENT NEGOTIATIONS PRECEDING THE FILING OF A SUIT AND ALLEGATIONS OF FRAUD DURING THEIR NEGOTIATION ARE ALSO CONSIDERED PROTECTED ACTIVITY.**

The filing of a lawsuit is an exercise of the First Amendment right to petition the government. <u>Soukup v. Law Offices of Herbert Hafif (Soukup)</u>, 39 Cal.4th 260, 291 (2006). "Consequently, claims that arise out of the filing of a suit arise from protected activity for purposes of the Anti-SLAPP statute [citation]." <u>Bonni v. St. Joseph Health System (Bonni)</u>, 11 Cal.5th 995, 1024 (2021).

The same is true of discussions that precede the filing of a suit: "'[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], ... such statements are equally entitled to the benefits of section 425.16.'" Briggs, supra, 19 Cal.4th at 1115.

The California Supreme Court in Bonni, supra, 11 Cal.5th at 1024–1025, recognized settlement negotiations that precede filing of any suit are protected activity and a party's allegation of fraud during those negotiations does not remove them from definition of protected activity.

In Bonni, the court dealt with a claim arising out of settlement negotiations preceding the filing of any suit. The court concluded that negotiations, no less than post filing settlement negotiations or communications in anticipation of filing, are protected activity for Anti-SLAPP purposes. In determining what constitutes protected petitioning activity, "we must give adequate 'breathing space' to the right of petition." Sosa v. DIRECTV, Inc., 437 F.3d 923, 932 (9th Cir. 2006).

"The right to petition means more than simply the right to communicate directly with the government. It necessarily includes those activities reasonably and normally attendant to effective petitioning." In re IBP Confidential Business Documents Lit., 755 F.2d 1300, 1310 (8th Cir. 1985), recognized petitioning activities thus include not only the conduct of litigation but also acts and communications reasonably incident to litigation, including pre-litigation settlement negotiations. See, Coastal States Marketing, Inc. v. Hunt, 694 F.2d 1358, 1367 (5th Cir. 1983) (protection for petitioning activity should extend to a pre-litigation "effort to compromise the dispute");

Globetrotter Software v. Elan Computer Group, Inc., 362 F.3d 1367, 1376 (Fed.Cir. 2004); McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1560 (11th Cir. 1992).

Consistent with this view, those California Courts of Appeal that have considered the question have concluded the Anti-SLAPP statute protects prelawsuit settlement negotiations, whether emanating from the would-be plaintiff or the would-be defendant. Takhar v. People ex rel. Feather River Air Quality Management Dist., 27 Cal.App.5th 15, 28–29 (2018); Karnazes, supra, 244 Cal.App.4th at 353.

In Bonni, the plaintiff alleged fraud during the negotiations. However, the court found the allegations of fraud did not remove the negotiations from the definition of protected activity. See, Navellier, supra, 29 Cal.4th at 90; Navarro, supra, 134 Cal.App.4th at 841–842; Dowling, supra, 85 Cal.App.4th 1418–1420.

Based upon the foregoing legal authorities and their application to the facts stated above, supported by the Declarations filed concurrently herewith, Defendants have established they met their burden under Prong I of the California Anti-SLAPP statute, shifting the burden to Plaintiff to prove a reasonable probability of success on this Sixth Claim for Relief alleged against Defendants. As set forth below, Plaintiff cannot, and the Sixth Claim for Relief must be dismissed against these Defendants.

## 5. ONCE DEFENDANTS MAKES THEIR PRIMA FACIE SHOWING, PLAINTIFF MUST ESTABLISH A PROBABILITY THAT PLAINTIFF WILL PREVAIL.

Once a defendant or cross defendant makes such prima facie showings, the burden shifts to plaintiff/cross complainant to establish a "probability" that it will prevail on whatever claims are asserted against defendant/cross defendant. See Cal.C.Civ.P. § 425.16(b). "(P)laintiff must demonstrate that the complaint is **both** legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment

[**emphasis added**]." Premier Med. Mgt. Systems, Inc. v. California Ins. Guar. Ass'n, 136 Cal.App.4th 464, 472 (2006); Soukup, supra, 39 Cal.4th at 291.

The burden is on plaintiff to produce evidence that would be admissible at trial -- i.e., to proffer prima facie showings of facts supporting a judgment in plaintiff's favor. Chavez v. Mendoza, 94 Cal.App.4th 1083, 1087 (2001). To establish a "probability" of prevailing on the merits, Plaintiff must demonstrate the First Amended Complaint is both legally sufficient and supported by prima facie showings of facts sufficient to support a favorable judgment. Navellier, supra, 29 Cal.4th at 89 and 93.

Here, Plaintiff cannot come forward to meet this burden of a prima facie case against Defendants. As the facts reveal, Plaintiff settled with Defendants and made no allegations the settlement was entered into based upon false representations. Plaintiff cannot prevail where he released Defendants. Plaintiff cannot prevail in showing he can prevail on the Sixth Claim for Relief against Defendants. Defendants must be dismissed.

## 6. CIVIL CODE SECTION 47(b) DEFINES THE LITIGATION PRIVILEGE.

Civil Code section 47, subdivision (b) defines what is commonly known as the "litigation privilege." "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal.3d 205, 212 (1990).

///

///

### 7. COMMUNICATIONS "WITHIN THE PROTECTION OF THE LITIGATION PRIVILEGE" ARE EQUALLY ENTITLED TO THE BENEFITS OF SECTION 425.16.

Cal.C.Civ.P. § 425.16(e)(1) and (2) are co-extensive with the litigation privilege in Cal.Civ.C. § 47(b). <u>Ruiz v. Harbor View Community Assn.</u>, 134 Cal.App.4th 1456, 1467 (2005). "Communications '"within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . are equally entitled to the benefits of section 425.16." <u>Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.</u>, 122 Cal.App.4th 1049, 1058 (2004).

The Anti-SLAPP legislation covers a broader definition of communications than the litigation privilege. A communication protected by the litigation privilege necessarily falls within Cal.C.Civ.P. § 425.16(e)(1) or (2). See, <u>Briggs</u>, supra, 19 Cal.4th at 1115.

As explained in <u>Briggs</u>, all litigation qualifies as "protected petitioning activity" under the Anti-SLAPP law: "Any matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect. The Legislature's stated intent is best served, therefore, by a construction of section 425.16 that broadly encompasses participation in official proceedings, generally, whether or not such participation remains strictly focused on 'public' issues." <u>Briggs</u>, supra, 19 Cal.4th at 1118; <u>Chavez v. Mendoza</u>, 94 Cal.App.4th 1083, 1087 (2001), where the court stated: "the filing of a judicial complaint satisfies the 'in connection with a public issue' component of section 425.16, subdivision (b)(1) because it pertains to an official proceeding."

Both Cal.C.Civ.P. § 425.16 and Cal.Civ.C. § 47(b) protect litigants' right of access to the courts without fear of being harassed subsequently by derivative tort actions. Healy v. Tuscany Hills Landscape & Recreation Corp., 137 Cal.App.4th 1, 5 (2006). Courts look to the Cal.Civ.C. §47(b) litigation privilege 'as an aid' in determining whether a given communication falls within the ambit of Cal.C.Civ.P. § 425.16(e)(1) and (2). Flatley v. Mauro (Flatley), 39 Cal.4th 299, 323 (2006).

The Anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct relating to such litigation, including statements made in connection with or in preparation of litigation." Kolar v. Donahue McIntosh & Hammerton, 145 Cal.App.4th 1532, 1537 (2006), In fact, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." Kashian v. Harriman (Kashian), 98 Cal.App.4th 892, 908 (2002); see also, Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal.App.4th 777 (1996) (Anti-SLAPP protected law firm investigation in anticipation of filing a complaint with the Attorney General).

As the California Supreme Court explained, "'[C]ommunications with "some relation" to judicial proceedings' are [rendered] 'absolutely immune from tort liability' by the litigation privilege [citation]." Rusheen, supra, 37 Cal.4th at 1057. The litigation "privilege is applicable to any communication, whether or not it amounts to a publication [or a broadcast]" Gallanis-Politis v. Medina, 152 Cal.App.4th 600, 615 (2007).

"Although originally applied only to defamation actions, the privilege has been extended to any communication, not just a publication, having 'some relation' to a judicial proceeding, and to all torts other than malicious prosecution." Kashian, supra, 98 Cal.App.4th at 913.

Here, the litigation privilege of Cal.Civ.C. § 47(b) protects Defendants from the Sixth Claim for Relief, as the settlement agreement, Release, and the communications incident to and in anticipation of the settlement agreement are all protected speech.

### 8. BECAUSE DEFENDANTS' ACTIONS ARE PROTECTED BY THE LITIGATION PRIVILEGE, PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF SUCCESS ON THE MERITS.

As explained by the California Supreme Court in <u>Flatley</u>, 39 Cal.4th supra at 323: "The litigation privilege is . . . relevant to the second step in the Anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. See, e.g., <u>Kashian v. Harriman</u> (2002) 98 Cal.App.4th 892, 926-927 . . . [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the Anti-SLAPP statute]; <u>Dove Audio, Inc. v. Rosenfeld, Meyer & Susman</u> (1996) 47 Cal.App.4th 777, 783-785 . . . [the defendant's prelitigation communication was privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)"

The privilege is absolute, even if the result is inequitable. See, <u>Doctors' Co. Ins. Servs. v. Superior Court</u>, 225 Cal.App.3d 1284, 1294 (1990). Moreover, any doubt as to whether the privilege applies is resolved in favor of applying it. <u>Adams v. Superior Court</u>, 2 Cal.App.4th 521, 529 (1992). "Any doubt about whether the privilege applies is resolved in favor of applying it." <u>Kashian</u>, supra, 98 Cal.App.4th at 913. The principal purpose of the Cal.Civ.C. § 47(b) litigation privilege "'is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.] The privilege promotes effective judicial proceedings by encouraging "'open channels of communication and the presentation of

evidence"' without the external threat of liability. [Citation.] The litigation privilege 'further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests.' [Citation.] 'Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.]' [Citation.]" <u>Home Ins. Co. v. Zurich Ins. Co.</u>, 96 Cal.App.4th 17, 23 (2002).

<u>Seltzer</u>, supra, 182 Cal.App.4th at 963–965, demonstrates how the litigation privilege precludes a plaintiff from establishing a probability of prevailing on the merits where allegations of fraud permeated a settlement agreement. In <u>Seltzer</u>, respondent's causes of action for fraud and intentional infliction of emotional distress were based on allegations that appellant, on behalf of Allstate, secretly negotiated an agreement with the Association that resulted in dismissal of the trespass claims from the Association's cross-complaint against respondent. Respondent contended she was injured by the agreement because it resulted in Allstate's refusal to pay defense expenses on the remainder of the cross-complaint, which Allstate asserted no longer involved a covered claim. The respondent did not dispute that, generally, settlement negotiations are protected activity. However, she contended that appellant's communications were not in the context of valid settlement negotiations because "[w]hile the form of the transaction was stated to be a settlement, its substance was the pursuit of Allstate's business interests and a fraud against" respondent. After finding that the appellant met its burden under Prong I, the court determined that the litigation privilege, as a matter of law,

precluded the respondent from prevailing on the merits. The court noted that while Cal.Civ.C. § 47 does not apply to non-communicative conduct, respondent's causes of action were based on his communications regarding settlement.

Here too, Plaintiff's Sixth Claim for Relief is barred and must be dismissed as there is a settlement agreement and a Release with all communications preceding the settlement agreement and Release being protected under the litigation privilege of Section 47. Plaintiff cannot prevail and cannot overcome the burden against him.

### 9. EVEN IF THE LITIGATION PRIVILEGE IS NOT APPLICABLE, PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING BECAUSE THE GENERAL RELEASE BARS HIS CLAIMS.

A general release of claims is used to resolve and bring finality to the parties' dispute by reducing or eliminating the possibility of future disputes and allowing the parties to "buy peace" to reduce litigation expenses. Anderson, *Please Release Me, Let Me Go! Releases of Unknown Claims in the Penumbra of California Civil Code Section 1542* (Please Release Me) 9 U.C. Davis Bus. L.J. 1, 3 (2008). The Legislature addressed the possibility that a general release might be broader than the releasing party intended by enacting Cal.Civ.C. § 1542, which provides in full: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." The Legislature intended Cal.Civ.C. § 1542 "to preclude the application of a [general] release to unknown claims in the absence of a showing, apart from the words of the release of an intent to include such claims." Casey v. Proctor (Casey), 59 Cal.2d 97, 109 (1963). This statutory limitation on general releases is not absolute; litigants are permitted to relinquish or waive the protections of Cal.Civ.C.

§ 1542 and release unknown claims. <u>Leaf v. City of San Mateo (Leaf)</u>, 104 Cal.App.3d 398, 411 (1980). Stated another way, the freedom of contract in California extends to the release of unknown claims. The question of whether the releasor intended to waive the protection of Cal.Civ.C. § 1542 and discharge unknown claims ultimately is a question of fact. <u>Leaf</u>, supra, 104 Cal.App.3d at 411. When parties intend to release unknown claims and waive the protection of Cal.Civ.C. § 1542, it is a common practice for the release document to quote the statutory text in full and include an express waiver of its protections. *Please Release Me*, supra, 9 U.C. Davis Bus. L.J. at p. 17. The recital of the statutory text is not required, but is helpful in establishing the parties' intention. (<u>Ibid</u>.)

The California Supreme Court established the following principle: "If the evidence, independent of the words of the release, indicates that the parties have consciously contracted in reference to unknown claims, the release is, of course, binding." <u>Casey</u>, supra, 59 Cal.2d at 110.

In the instant matter, on February 27, 2020, Plaintiff signed the Release, which is a general release, releasing Defendants from any and all known and unknown claims. That Release bars Plaintiff's claims against Defendants, including the Sixth Claim for Relief, and precludes Plaintiff from establishing a probability of prevailing on the merits. This Motion must be granted. The Defendants must be dismissed with prejudice.

**10. EVEN IF THE LITIGATION PRIVILEGE IS NOT APPLICABLE, PLAINTIFF CANNOT ESTABLISH A PROBABILITY OR PREVAILING BECAUSE THE MOVING DEFENDANTS DID NOT CONSPIRE, ENGAGE IN ANY FRAUD, OR MAKE ANY INTENTIONAL MISREPRESENTATIONS.**

The Van Lingen Declaration filed concurrently with this Motion demonstrates he undertook a full investigation before deciding to accept responsibility for the damages to Plaintiff's vehicle. That investigation consisted of reviewing still photographs, video

footage, reviewing the CHP 180 Vehicle Condition Report, and talking to his general manager, Mr. Del Campo. The Plaintiff himself was adamant the damage occurred while on the lot. It was only the tow truck driver who said that the damage occurred before the car was impounded.

But the still photographs did not demonstrate any vandalism. Based upon the strong evidence in the report corroborated by Plaintiff himself and the photographs, Mr. Van Lingen made a reasoned business judgment decision to accept responsibility for the damage to Plaintiff's vehicle for which he paid, and Plaintiff accepted, $2,250 in consideration for the Release.

***At no time did he (Mr. Van Lingen) make any misrepresentation as to who caused the damaged.*** He negotiated a fair and reasonable settlement which Plaintiff approved given that the damage exceeded the replacement value for his vehicle. It was based upon estimates the Plaintiff himself provided.

At no time did any of the Defendants make any false statements about who caused the vandalism or conspired with Torrance Police Officers Welden or Tomsic, Officers Mr. Van Lingen never met. Given the value of the vehicle, Plaintiff accepted and received the reasonable value of his total loss.

After executing the Release, Plaintiff filed the complaint to commence a lawsuit which did not include any claims against Defendants. In the FAC, Plaintiff added Defendants to the Sixth Claim for Relief alleging a conspiracy with the vandalizing officers. Plaintiff has no evidence Defendants committed fraud or made any false statements, even if the litigation privilege did not apply, Plaintiff cannot meet his burden under Prong II, requiring granting of the Motion and Defendants dismissal, with prejudice.

### 11. AN AWARD OF ATTORNEY FEES IS AS A MATTER OF STATE LAW.

The analysis of whether to award attorney fees to Defendants arising from this Motion "… starts with the basic premise that the issue of attorneys' fees has long been considered for Erie purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir.2010) ('Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law....'); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 273 (1st Cir.1990) (same); N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir.1988) (same); see also, e.g., Northon v. Rule, 637 F.3d 937, 938 (9th Cir.2011) (per curiam) (same); Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1280 (10th Cir.2011) (same); Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir.2008) (same)." Volkswagen Grp. of Am., Inc. v. Peter J. McNulty Law Firm, 692 F.3d 4, 15 (1st Cir. 2012).

Upon granting of the Motion, Cal.C.Civ.P. §425.16(c), provides that as the successful moving parties, Defendants will be entitled to seek an award of their attorney fees and costs incurred in making the instant Motion. See, American Humane Assoc. v. LA Times Communications, 92 Cal. App. 4th 1095 (2001).

### D.   CONCLUSION

Because the allegations contained in the Sixth Claim for Relief arise out of Defendant's exercise of their right to free speech under the State and Federal Constitutions and it is not probable that Plaintiff will prevail upon his Sixth Claim for Relief, the Motion should be granted, the Sixth Claim for Relief stricken, and Defendants dismissed with prejudice.

**WHEREFORE**, Defendants respectfully request this Court grant this Motion and the relief requested therein by entering an appropriate Order based thereon lodged concurrently herewith and set a time by which Defendants will be heard on a motion for their attorney fees awardable under Cal.C.Civ.P. §425.16(c).

Dated: July 20, 2022

LAW OFFICES OF LOUIS J. ESBIN

/s/ Louis J. Esbin

LOUIS J. ESBIN, ESQ.
Attorneys Defendants, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN

## DECLARATION OF ROBERT VAN LINGEN

I, ROBERT VAN LINGEN, declare and state as follows:

1.      I am a named defendant in the above captioned matter pending before this Court and am a principal and the Chief Executive Officer of defendants, Van Lingen Body Shop, Inc., dba Van Lingen Towing, and Van Lingen Towing, Inc., in which capacity I am the custodian of business records and in which capacity, except as so stated I have personal knowledge of the matters of which I am prepared to testify, could and would testify truthfully and honestly to their truth and accuracy.

2.      I make this declaration in support of the Motion being filed concurrently in which through our counsel we (the Defendants) are seeking to strike the Sixth Claim for Relief of The Second Amended Complaint for Intentional Misrepresentation / Fraud.

3.      Plaintiff sued me, individually, as well as Van Lingen Body Shop, Inc. and Van Lingen Towing, Inc., claiming the two companies are my alter egos. Van Lingen Towing, Inc. is a California corporation. A true copy of the California Secretary of State filing is attached and incorporated by reference as "**Exhibit 1**."

4.      Van Lingen Towing is a separate corporate entity from Van Lingen Body Shop, Inc., which is also a California corporation. A true copy of the California Secretary of State filing is attached and incorporated by reference as "**Exhibit 2.**"

5.      Van Lingen Towing, Inc., has not been involved in doing any business of any kind for at least the last 20 years. It has no employees, does not make any sales, and does not conduct any business activities. Although the company remains "in good standing" with the California Secretary of State the company itself is not related to the business of Van Lingen Body Shop, Inc. dba Van Lingen Towing.

6.      Van Lingen Body Shop, Inc., does business under the fictitious business name of Van Lingen Towing. A true copy of its fictitious business name filing with the County of Los Angeles is attached and incorporated by reference as "**Exhibit 3**."

7.      Plaintiff alleges the two companies and me, individually, conspired with the other defendants to hide the actions of vandalism of "one or more Torrance Police Department / White Supremacist / Neo-Nazi group(s) / police officer gang(s)" by falsely misrepresenting that the towing company was responsible for the damage to plaintiff's vehicle. See, FAC ¶¶181-184. I did not and as the CEO of my companies, we did not conspire with anyone. The allegation is false.

8.      On or about February 27, 2020, Plaintiff signed a general release (the "Release") (a true copy of which is attached and incorporated by reference as "**Exhibit 4**"), releasing Van Lingen Towing and its "agents, servants, successors, heirs, executors, administrators, successors and assigns…" from all actions, damages, in any way, directly or indirectly connected with or arising out of "… spray paint damage of interior and exterior portions of 2004 Hyundai Elantra."

9.      In consideration for the Release, Plaintiff received a check the amount of $2,250.00 dated February 27, 2020, which Plaintiff accepted in full payment for all damages caused by the vandalism to his vehicle. A true and correct copy of the check in the amount of $2,250 is attached and incorporated as "**Exhibit 5**."

10.     Plaintiff alleges that on January 27, 2020, Torrance Police Officers WELDIN & TOMSIC vandalized Plaintiff's car, by, among other things, spray-painting a Swastika on the back seat of Plaintiff's car, a Happy Face on the front passenger seat, and some

paint on the passenger side outside rear view mirror, and on the rear bumper. FAC ¶ 155.

11.     Plaintiff further alleges that the vandalism was witnessed by a Van Lingen Towing tow truck driver, Christopher Dunn. FAC ¶156.

12.     Plaintiff further alleges that after defendants WELDIN and TOMSIC were done vandalizing Plaintiff's car, Mr. Dunn placed Plaintiff's car on a flat-bed tow truck, and towed it to Van Lingen Towing, at 2755 Lomita Blvd., Torrance, CA 90505. FAC ¶157.

13.     Plaintiff further alleges I and my companies were involved in "an ongoing conspiracy, agreement and understanding, between the Torrance Police Department to make and keep plaintiff ignorant of the fact that Cody Weldin and Christopher Tomsic were the real vandals who painted and damaged his car." See, FAC ¶199.

14.     We are not involved with the Torrance Police Department as alleged by Plaintiff.

15.     The conspiracy alleged consisted of "affirmative fraudulent representations by said conspirators, that were intended to, and resulted in, plaintiff not filing a California Government Claim for Damages against the City of Torrance until January 19, 2022…" See, FAC ¶200. We dispute these allegations.

16.     The specific alleged misrepresentation of fact was that it was a Van Lingen Towing employee / agent / driver who vandalized the Plaintiff's car, and not a Torrance Police Department police officer. FAC ¶204.

17.     Plaintiff further alleges that this caused Plaintiff to suffer harm, to wit: a) accepting less money than Plaintiff would have sought and would have accepted for the vandalizing of his car, if he had known that it had been done by a Torrance Police Department police officer(s) and not a Van Lingen Towing employee / agent / driver who vandalized the

Plaintiff's car, resulting in his obtaining less monies for the vandalizing of his car than he would have obtained had Plaintiff not been so deceived by Defendants who conspired to induce this false belief by the Plaintiff as to who vandalized his car, and b) by delaying the Plaintiff from suing defendants." See, FAC ¶204.

18. These allegations are disputed and any claims against us were settled, the Release signed and consideration of $2,250 paid.

19. Plaintiff is now suing us for $3 million in compensatory damages and another $3 million in punitive damages (See, FAC ¶¶ 206-207).

20. We dispute any liability as Plaintiff negotiated a settlement with us for which he signed the Release and accepted payment in consideration.

21. The entire involvement of me, individually, and Van Lingen Body Shop, Inc. dba Van Lingen Towing, was to settle a dispute regarding vandalism to Plaintiff's car at a time where both the Plaintiff and me reasonably believed the vandalism took place while the car was at the Van Lingen Towing lot.

22. Plaintiff first noticed the damage when he picked up the vehicle from the yard, after paying the impound charges. It is critical that at the time of settlement, Plaintiff believed and in fact asserted that the vehicle was damaged after it was towed to our facility.

23. Erick Del Campo, the day manager at Van Lingen Towing, was present when Plaintiff came to retrieve his vehicle. See, Declaration of Erick Del Campo ¶4.

24. As set forth in Mr. Del Campo's Declaration, the tow truck driver (Mr. Dunn) told him (Mr. Del Campo) the damage occurred to the vehicle before the vehicle was picked up for towing to the Van Lingen facility.

25.     The tow truck driver took eight digital photos after the vehicle had been unloaded from the tow truck.

26.     Based upon my review of the still photos, it was not apparent any vandalism had taken place, since Plaintiff's complaint of damage at the time was to the interior of the vehicle.

27.     We keep video surveillance equipment and tapes in our corporate office.

28.     Plaintiff alleges in the Second Amended Complaint that my employee and the police viewed videotapes. That is entirely false. I know this because none of the employees had access to the corporate offices. They reviewed the eight still photos taken by the tow truck driver.

29.     I personally reviewed the video footage on or about February 12, 2020. The video footage did not provide any further clarity as to when the damage first occurred.

30.     Only my sons Rob and Sean and myself have access to the video footage which is kept on a separate hard drive in the locked corporate offices.

31.     In connection with each impounded vehicle, the police department generates a "CHP 180 Vehicle Condition Report."

32.     I reviewed the report which confirmed no damage was reported to the vehicle at the time it was impounded. I had no reason to believe the report was false.

33.     As part of my investigation, I learned that Mr. Dunn had told our manager, Mr. Del Campo, that the vehicle had been vandalized before it was ever impounded. At no time did the tow truck driver ever assert that he caused the damage. If the tow truck driver was lying than Van Lingen would still be responsible. So, I made the business judgment decision to take responsibility for the damage.

34.     That however did not help me because I had a customer asserting that the damage took place while in my yard, although it was only after he retrieved his vehicle did he notice the vandalism.

35.     Moreover, in my experience in this profession for more than 20 years, I have found that when tow truck drivers do something wrong, they lie about it. But based upon the photographs I reviewed I had no evidence that the tow truck driver caused the damage before the vehicle was impounded.

36.     The report, together with the customer (Plaintiff) himself, insisted there was no damage to the vehicle prior to the time it was impounded. Based upon the strong evidence in the report corroborated by the Plaintiff himself and the photographs, I made a reasoned business judgment decision to accept responsibility for the damage.

37.     I contacted Plaintiff and offered to have the vehicle repaired back to pre-claim condition.

38.     Plaintiff wanted to have his own shop do the work and provided two estimates. True and correct copies of the shop estimates provided by Plaintiff to Defendants are attached and incorporated as "**Exhibits 6 and 7**."

39.     Using Kelley Blue Book and Auto Trader.com, I did a market valuation of like kind and quality vehicles and determined the value to be NO MORE than $2,500.00.

40.     The two repair estimates exceeded the actual cash value of the vehicle, rendering the damage to the vehicle a total loss.

41.     Mr. Swaine indicated that the vehicle was fitted with an interlocking ignition device ordered by the court and DMV. He would have to plan to have this removed. I indicated we do have experience in assisting with this issue on vehicles that are totaled in

accidents and that we would accommodate the supplier of this device however he needs us to.

42.    We discussed further his option to retain the car as salvage. In this scenario, he receives the fair market value, less what a junk yard would pay for the salvage. We discussed the salvage value and agreed to $500.00.

43.    He further related that all the spray paint had been removed by him with simple paint thinner. I personally inspected the car and verified it had been in fact removed.

44.    Negotiations ensued and on February 27, 2020, Plaintiff came to our facility, signed the Release, and accepted the $2,250 check as payment in full.

45.    At no time did any of us ever make any false representations about who caused the vandalism or conspire with Torrance Police Officers Welden or Tomsic.

46.    At no time has Plaintiff taken any action to rescind the Release he signed or return the $2,250.00, which given the value of the vehicle he received as the reasonable value of his total loss.

///

///

///

///

///

///

///

///

///

I declare under penalty of perjury under the laws of the state of California and of the United States of America on this July 20, 2022, in Los Angeles County, California, that the foregoing is true and correct.

/s/ Robert Van Lingen
Robert Van Lingen, declarant

40

## DECLARATION OF ERICK MARTIN DEL CAMPO

I, ERICK MARTIN DEL CAMPO, declare and state as follows:

1.      I have been the manager at Van Lingen Body Shop, Inc. dba Van Lingen Towing, whose principal place of business is 2755 Lomita Blvd., Torrance, CA 90505, in which capacity, except as so stated I have personal knowledge of the matters of which I am prepared to testify, could and would testify truthfully and honestly to their truth and accuracy.

2.      My address and phone number will be provided upon request.

3.      I make this declaration in support of the Motion being filed concurrently in which it is my understanding, through Defendants' counsel, my employer is seeking to strike the Sixth Claim for Relief of The Second Amended Complaint for Intentional Misrepresentation / Fraud.

4.      On or about January 28th, 2020, I was working the day shift at Van Lingen Towing, when the Plaintiff, Kiley Swaine, and his father, came in to retrieve an impounded 2004 Hyundai Elantra.

5.      The applicable charges were paid, and the car was released to Plaintiff.

6.      A few moments later, they both returned, looking very upset. They both told me that the vehicle had been vandalized while on our lot and they immediately called the Torrance Police Department to take a report and start an investigation.

7.      Plaintiff told me he knew the damage occurred on our lot because there was no damage to his vehicle at the time it was impounded on or about January 27, 2022.

8.      I then introduced Plaintiff to Danielle Veliz, an office assistant at Van Lingen Towing.

9.      When the Torrance Police Officers arrived, Danielle went into the back room with the two officers to review digital photographs taken of the vehicle by the tow truck driver.

10.     Unfortunately, the digital photos did not depict the vandalism, which was mostly done to the interior of the car.

11.     Later that day, after receiving Plaintiff's complaints, I called and spoke with the tow truck driver, Christopher Dunn, to ask him about the vandalism.

12.     That tow was Mr. Dunn's last tow for us because he had plans to leave the company the very next day.

13.     Mr. Dunn informed me during our telephone conversation that the vehicle had been vandalized before he picked it up for impound.

14.     I asked him how he knew this, and he told me he specifically noticed the vandalism.

15.     I reported all this information to Robert Van Lingen, the CEO of the Company.

///

///

///

///

///

///

///

///

///

///

I declare under penalty of perjury under the laws of the state of California and of the United States of America on this July 20, 2022, in Los Angeles County, California, that the foregoing is true and correct.

/s/ Erick Martin Del Campo
Erick Martin Del Campo, declarant

## **DECLARATION OF LOUIS J. ESBIN**

I, LOUIS J. ESBIN, declare and state:

1.      I am an attorney at law duly licensed to practice law by the State Bar of California, am admitted in this honorable Court and all courts in the state of California, including the United States District Courts and Ninth Circuit Court of Appeals, am a certified specialist in Bankruptcy Law by the State Bar of California Board of Legal Specialization, am counsel for Defendants, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN, in the above referenced case, am a custodian of the litigation records for this matter, such that in this capacity, except as so stated, I have personal knowledge of the statements made herein, such that if called to testify I could and would truthfully and accurately.

2.      This declaration is being made without waiver of the attorney-client privilege or the attorney work product privileges and no waivers should be construed arising herefrom.

3.      This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 6, 2022, from which a Defendants proposed the parties enter into a Stipulation Between Plaintiff and Certain Defendants to Amend Order Setting Scheduling Conference and to Continue Hearing on Motion to Dismiss. Even following that original meet and confer, I spoke with and emailed counsel for Plaintiff about his amending the First Amended Complaint. Plaintiff rejected the offer to Stipulate and each subsequent overture. This Motion now follows.

4.      In preparing this declaration I obtained copies of pleadings and filings made by the parties in this case. I downloaded those documents through the PACER service to which I have access and reviewed the First Amended Complaint and the Second Amended Complaint, copies of which were provided to Defendants, such that from the First and proposed Second Amended Complaints the references are made in the Motion and the supporting declaration of Mr. Van Lingen.

I declare, under penalty of perjury on this 20 day of July 2022, in Valencia, California, under the laws of the State of California, that the foregoing is true and correct to the best of my information and belief.

/s/ Louis J. Esbin

Louis J. Esbin, Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**"EXHIBIT 1"**

27
28



## California Secretary of State
### Electronic Filing

**FILED**
Secretary of State
State of California

# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | VAN LINGEN TOWING, INC. |

| | |
|---|---|
| Entity (File) Number: | C2529164 |
| File Date: | 11/15/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GY48160 |

**Detailed Filing Information**

1. Entity Name:

   VAN LINGEN TOWING, INC.

2. Business Addresses:
   a. Street Address of Principal
      Office in California:

      2755 LOMITA BLVD
      TORRANCE, California 90505
      United States of America

   b. Mailing Address:

      2755 LOMITA BLVD
      TORRANCE, California 90505
      United States of America

   c. Street Address of Principal
      Executive Office:

      2755 LOMITA BLVD
      TORRANCE, California 90505
      United States of America

3. Officers:
   a. Chief Executive Officer:

      ROBERT  VAN LINGEN
      2755 LOMITA BLVD
      TORRANCE, California 90505
      United States of America

   b. Secretary:

      SEAN   VAN LINGEN
      2755 LOMITA BLVD
      TORRANCE, California 90505
      United States of America

Document ID: GY48160

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:

        SEAN   VAN LINGEN
        2755 LOMITA BLVD
        TORRANCE, California 90505
        United States of America

4.  Director:

        ROBERT  VAN LINGEN
        2755 LOMITA BLVD
        TORRANCE, California 90505

    Number of Vacancies on the Board of
    Directors:          United States of America

        0

5.  Agent for Service of Process:

        VAN LINGEN BODY SHOP, INC.
        (C0556218)

6.  Type of Business:

        TOWING

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   ROBERT VAN LINGEN

Use *bizfile.sos.ca.gov* for online filings, searches, business records, and resources.

Document ID: GY48160

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**"EXHIBIT 2"**



## California Secretary of State
Electronic Filing

**FILED**
Secretary of State
State of California

# Corporation - Statement of Information

Entity Name:   VAN LINGEN BODY SHOP, INC.

| | |
|---:|:---|
| Entity (File) Number: | C0556218 |
| File Date: | 09/16/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GW55583 |

**Detailed Filing Information**

1. Entity Name:

   VAN LINGEN BODY SHOP, INC.

2. Business Addresses:

   a. Street Address of Principal
      Office in California:

      20621 EARL ST
      Torrance, California 90503
      United States of America

   b. Mailing Address:

      20621 EARL ST
      Torrance, California 90503
      United States of America

   c. Street Address of Principal
      Executive Office:

      20621 EARL ST
      Torrance, California 90503
      United States of America

3. Officers:

   a. Chief Executive Officer:

      ROBERT  VAN LINGEN
      20621 EARL ST
      Torrance, California 90503
      United States of America

   b. Secretary:

      SEAN  VAN LINGEN
      20621 EARL ST
      Torrance, California 90503
      United States of America

Document ID:GW55583

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:

                      ROBERT  VAN LINGEN
                      20621 EARL ST
                      Torrance, California 90503
                      United States of America

4.  Director:

                      ROBERT  VAN LINGEN
                      20621 EARL ST
                      Torrance, California 90503

Number of Vacancies on the Board of Directors:      United States of America

                      0

5.  Agent for Service of Process:

                      VAN LINGEN TOWING, INC.
                      (C2529164)

6.  Type of Business:

                      VEHICLE TOWING

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:  ROBERT VAN LINGEN

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GW55583

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**"EXHIBIT 3"**

YOUR RETURN MAILING ADDRESS

NAME: RUSHFILING, INC.

ADDRESS: PO BOX 341490

CITY: LOS ANGELES          STATE: CA          ZIP CODE: 90034



**2022 109386**

FILED          EXPIRES
May 19 2022     May 19 2027

Dean C. Logan, Registrar-Recorder/County Clerk

Electronically signed by ANDREA GUTIERREZ

DEAN C. LOGAN, REGISTRAR-RECORDER/COUNTY CLERK

# FICTITIOUS BUSINESS NAME STATEMENT

### The following person(s) is (are) doing business as:

1. VAN LINGEN TOWING                               2.
Fictitious Business Name(s)

2755 LOMITA BLVD                                   20621 EARL ST
Street address of principal place of business      Mailing address if different

TORRANCE     CA        90505      LOS ANGELES   TORRANCE   CA        90503
City          State      Zip       COUNTY        City        State      Zip

Articles of Incorporation or Organization Number (if applicable): AI #ON 556218

REGISTERED OWNER(S):

1. VAN LINGEN BODY SHOP, INC.
Full Name/Corp/LLC (P.O. Box not accepted) If Corp/LLC must be registered in CA     Full Name/Corp/LLC (P.O. Box not accepted)

20621 EARL ST,
Residence Address (if Corp. or LLC enter the physical address of the Corp./LLC)     Residence Address

TORRANCE       CA        90503
City            State      Zip                                                       City            State      Zip

CALIFORNIA
If Corporation or LLC – Print State of Incorporation/Organization                    If Corporation or LLC – Print State of Incorporation/Organization

IF MORE THAN TWO REGISTRANTS, ATTACH ADDITIONAL SHEET SHOWING OWNER INFORMATION

THIS BUSINESS IS CONDUCTED BY: (Check one)
☐ an Individual          ☐ a General Partnership     ☐ a Limited Partnership     ☐ a Limited Liability Company
☐ an Unincorporated Association other than a Partnership    ☐ a Corporation    ☐ a Trust    ☐ Copartners
☐ a Married Couple       ☐ Joint Venture     ☐ State or Local Registered Domestic Partners    ☐ a Limited Liability Partnership

The date registrant commenced to transact business under the fictitious business name or names listed above on 03/1948
(Insert N/A above if you haven't started to transact business)

**I declare that all information in this statement is true and correct.**
**(A registrant who declares as true any material matter pursuant to Section 17913 of the Business and Professions Code that the registrant knows to be false is guilty of a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000)).**

REGISTRANT/CORP/LLC NAME (PRINT) VAN LINGEN BODY SHOP, INC.                TITLE CEO

REGISTRANT SIGNATURE _____     IF CORP OR LLC, PRINT NAME ROBERT VAN LINGEN

If corporation, also print corporate title of officer.   If LLC, also print title of officer or manager.
This statement was filed with the County Clerk of LOS ANGELES on the date indicated by the filed stamp in the upper right corner.

NOTICE – IN ACCORDANCE WITH SUBDIVISION (a) OF SECTION 17920, A FICTITIOUS NAME STATEMENT GENERALLY EXPIRES AT THE END OF FIVE YEARS FROM THE DATE ON WHICH IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK, EXCEPT, AS PROVIDED IN SUBDIVISION (b) OF SECTION 17920, WHERE IT EXPIRES 40 DAYS AFTER ANY CHANGE IN THE FACTS SET FORTH IN THE STATEMENT PURSUANT TO SECTION 17913 OTHER THAN A CHANGE IN THE RESIDENCE ADDRESS OF A REGISTERED OWNER.  A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED BEFORE THE EXPIRATION.  EFFECTIVE JANUARY 1, 2014, THE FICTITIOUS BUSINESS NAME STATEMENT MUST BE ACCOMPANIED BY THE AFFIDAVIT OF IDENTITY FORM.

THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NAME IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER FEDERAL, STATE, OR COMMON LAW (SEE SECTION 14411 ET SEQ., BUSINESS AND PROFESSIONS CODE).

*I HEREBY CERTIFY THAT THIS COPY IS A CORRECT COPY OF THE ORIGINAL STATEMENT ON FILE IN MY OFFICE.*

BY: A. Gutierrez _____, Deputy

*DEAN C. LOGAN, LOS ANGELES COUNTY CLERK*

Rev. 4/2021          P.O. BOX 1208, NORWALK, CA 90651-1208

Los Angeles Registrar-Recorder/County Clerk                                    Page 1 of 1

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

MAY 1 9 2022

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**"EXHIBIT 4"**

# Full and Final Release

**Kiley Swaine** (the "Releasor"), in consideration of good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Releasor, hereby releases and forever discharges **Van Lingen Towing** (the "Releasee"), Releasee's agents, servants, successors, heirs, executors, administrators, successors and assigns of and from all actions, any and all manner of claims, demands, causes of action, damages or suits whatsoever, which the Releasor had, now has or which the Releasor, Releasor's heirs, executors, administrators and assigns or any of them hereafter can, shall or may have by reason of, or in any way directly or indirectly, connected with, or arising out of:  **spray paint damage of interior and exterior portions of 2004 Hyundai Elantra, VIN # 8139.**

For the same consideration, the Releasor further agrees not to make claim or take proceedings against the Releasee or any other person or entity which may claim contribution or indemnity under the provisions of any statute or otherwise.

I hereby waive the provisions of section 1542 of the California Civil Code, which states:

> *"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."*

**IN WITNESS WHEREOF**, the Releasor has executed this Release on

02 / 27 / 2020
*(handwritten date by Releasor)*

Kiley Swaine
(Signature of Releasor)

Kiley Swaine
(Print Name)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**"EXHIBIT 5"**

**Van Lingen Body Shop, Inc.**
2755 Lomita Blvd
Torrance, CA 90505
310-370-4533

**Preferred Bank**
21615 Hawthorne Blvd
Torrance, CA 90503
310-792-5100

16-4220
————
1220

**27704**

DATE    *2/27/20*
*Reference:*

PAY    **Kiley Swaine**                                    $   **\*\*2,250.00**

*TWO-THOUSAND TWO-HUNDRED-FIFTY AND 00/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\**    DOLLARS

TO THE
ORDER
OF

**Kiley Swaine**

*The*
**Van Lingen**
Group

Memo   Final/Full Settlement to 04 Hynd. Vandalized Vin 381

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈2222⑈

---

**Van Lingen Body Shop, Inc.**                                    27704

Kiley Swaine

| Date | Type | Reference | Original Amt. | Balance Due | 2/27/20 Discount | Payment |
|------|------|-----------|---------------|-------------|---------|---------|
| 2/27/20 | Bill | | 2,250.00 | 2,250.00 | | 2,250.00 |
| | | | | | Check Amount | 2,250.00 |

Preferred Bank -Prima    Final/Full Settlement to 04 Hynd. Vandalized Vin                2,250.00

---

**Van Lingen Body Shop, Inc.**                                    27704

Kiley Swaine

| Date | Type | Reference | Original Amt. | Balance Due | 2/27/20 Discount | Payment |
|------|------|-----------|---------------|-------------|---------|---------|
| 2/27/20 | Bill | | 2,250.00 | 2,250.00 | | 2,250.00 |
| | | | | | Check Amount | 2,250.00 |

Preferred Bank -Prima    Final/Full Settlement to 04 Hynd. Vandalized Vin                2,250.00

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26 **"EXHIBIT 6"**
27
28

American Upholstery
90250



Manny
310.676.9824
11508 Hawthorne Blvd
Hawthorne ca 90250

OFFICIAL UPHOLSTERY SHOP FOR



| Name/Address |
| --- |
| KILEY SWAINE |
| 310-614-0408 |
| 2004 HYUNDAI ELANTRA |

| Date | Estimate No. | Project |
| --- | --- | --- |
| 02/17/20 | 1841 | |

| Item | Description | Quantity | Cost | Total |
| --- | --- | --- | --- | --- |
| AU | RECOVER FRONT AND REAR SEATS | 1 | 2,500.00 | 2,500.00 |
| | Sales Tax | | 10.25% | 0.00 |
| | | | Total | $2,500.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**"EXHIBIT 7"**



**XPEDX**

SAMPLE DEPARTMENT
7500 AMIGOS AVENUE
DOWNEY, CA. 90242

---

**JIM AND JACK'S EL SEGUNDO**
1605 E GRAND AVE, EL SEGUNDO, CA 9024S
Phone: (310) 322-5733
FAX: (310) 640-7088

| | |
|---|---|
| Workfile ID: | 68103454 |
| PartsShare: | SLrLLF |
| Federal ID: | 95-3441830 |
| Federal EPA: | CAD028131639 |
| BAR: | ARD-00076404 |

### Preliminary Estimate

**Customer: Swaine, Kiley**

| | | |
|---|---|---|
| | Written By: Carlos Ku | |
| Insured:  Swaine, Kiley | Policy #: | Claim #: |
| Type of Loss: | Date of Loss: | Days to Repair:  5 |
| Point of Impact: | | |

**Owner:**
Swaine, Kiley
(310) 614-0408 Cell

**Inspection Location:**
JIM AND JACK'S EL SEGUNDO
1605 E GRAND AVE
EL SEGUNDO, CA 90245
Repair Facility
(310) 322-5733 Business

**Insurance Company:**

---

### VEHICLE

2004 HYUN Elantra GLS Manual 4D SED 4-2.0L Gasoline MPFI

| | | | |
|---|---|---|---|
| VIN:  KMHDN46D24U838139 | Interior Color: | Mileage In: | Vehicle Out: |
| License: | Exterior Color: | Mileage Out: | Job #: |
| State: | Production Date: | Condition: | |

| TRANSMISSION | Dual Mirrors | RADIO | Cloth Seats |
|---|---|---|---|
| Automatic Transmission | Body Side Moldings | AM Radio | Bucket Seats |
| Overdrive | Tinted Glass | FM Radio | **WHEELS** |
| **POWER** | Console/Storage | Stereo | Wheel Covers |
| Power Steering | **CONVENIENCE** | Search/Seek | **PAINT** |
| Power Brakes | Air Conditioning | Cassette | Clear Coat Paint |
| Power Windows | Intermittent Wipers | **SAFETY** | **OTHER** |
| Power Locks | Tilt Wheel | Drivers Side Air Bag | Power Trunk/Gate Release |
| Power Mirrors | Rear Defogger | Passenger Air Bag | |
| Heated Mirrors | Keyless Entry | Front Side Impact Air Bags | |
| **DECOR** | Alarm | **SEATS** | |

Get live updates at  www.carwise.com/e/3LbHVA

---

### Preliminary Estimate

**Customer: Swaine, Kiley**

2004 HYUN Elantra GLS Manual 4D SED 4-2.0L Gasoline MPFI

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|
| 1 | # | ******GENERAL****** | | 1 | | | |
| 2 | # | MORE DAMAGES MAY BE FOUND AFTER VEHICLE IS TAKEN APART | | 1 | | | |
| 3 | | **FRONT DOOR** | | | | | |
| 4 | Repl | RT Mirror outside | 876202D520 | 1 | 235.39 | 0.3 | 0.5 |
| 5 | | Add for Clear Coat | | | | | 0.1 |
| 6 | R&I | RT R&I trim panel | | | | 0.4 | |
| 7 | | **REAR BUMPER** | | | | | |
| 8 | Repl | Prep unprimed bumper | | 1 | | | 0.7 |
| 9 | | O/H bumper assy | | | | 2.6 | |
| 10 | Repl | Bumper cover sedan | 866102D500 | 1 | 392.47 | Incl. | 2.6 |
| 11 | | Add for Clear Coat | | | | | 1.0 |
| 12 | # | Refn | Color Tint | | | | 0.5 |
| 13 | # | Flex Additive Agent | | 1 | 14.00 | | |
| 14 | # | Prep Unprimed Bumper | | 1 | | | 0.7 |
| 15 | # | D&R Battery | | 1 | | 0.3 | |
| 16 | # | Color Sand & Buff | | 1 | | 1.0 | |
| 17 | # | Re-Set Memory Functions | | 1 | | 1.0 M | |
| 18 | # | Pre / Post Scan | | 1 | | 1.0 M | |
| 19 | # | Clear Fault Codes | | 1 | | 1.0 M | |
| 20 | # | Hazardous Waste Removal | | 1 | 15.00 X | | |
| 21 | # | Adhesion Promotor New Cover | | 1 | 10.00 | 1.0 | |
| | | **SUBTOTALS** | | | 666.86 | 8.6 | 6.1 |

### ESTIMATE TOTALS

| Category | Basis | Rate | Cost $ |
|---|---|---|---|
| Parts | | | 651.86 |
| Body Labor | 5.6 hrs  @ | $ 58.00 /hr | 324.80 |
| Paint Labor | 6.1 hrs  @ | $ 58.00 /hr | 353.80 |
| Mechanical Labor | 3.0 hrs  @ | $ 130.00 /hr | 390.00 |
| Paint Supplies | 6.1 hrs  @ | $ 40.00 /hr | 244.00 |
| Miscellaneous | | | 15.00 |
| Subtotal | | | 1,979.46 |
| Sales Tax | $ 895.86  @ | 9.5000 % | 85.11 |
| **Grand Total** | | | **2,064.57** |

Preliminary estimate is based on visual inspection.

EPA # CAD02813639

BAR # AB-076404

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this district court case.  My business address is:

Law Offices of Louis J. Esbin
27451 Tourney Road, Suite 120, Valencia, California 91355

A true and correct copy of the foregoing document described **NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by the L.R.; and **(b)** in the manner indicated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Rule(s) ("L.R."), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 20, 2022, I checked the CM/ECF docket for this district court case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Jerry Steering (jerrysteering@yahoo.com)          Patrick Desmond (pdesmond@wss-law.com)
Louis J. Esbin (Louis@Esbinlaw.com)               Richard A. Marcus
                                                   (Richard@attorneyrichardmarcus.com)

☐ Service information continued on attached page

2. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On July 20, 2022, I served the following person(s) and/or entity(ies) at the last known address(es) in this district court case by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Hon. MARK C. SCARSI
United States Courthouse
350 W. 1st Street, 7th Floor, Courtroom 7C
Los Angeles, CA 90012

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling L.R., on July 20, 2022, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*.

Jerry Steering (jerrysteering@yahoo.com)          Patrick Desmond (pdesmond@wss-law.com)
Louis J. Esbin (Louis@Esbinlaw.com)               Richard A. Marcus
                                                   (Richard@attorneyrichardmarcus.com)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 20, 2022 | Linda Dekker | /s/ Linda Dekker |
|---------------|--------------|------------------|
| *Date* | *Type Name* | *Signature* |