**LAW OFFICE OF JERRY L. STEERING**
Jerry L. Steering, Esq. (SBN 122509)
jerry@steeringlaw.com
Brenton W. Aitken Hands, Esq. (SBN 308601)
brentonaitken@gmail.com
4063 Birch Street, Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

KILEY DELIEFDE SWAINE,

    Plaintiff,

    vs.

CITY OF TORRANCE, CODY
WELDIN, CHRISTOPHER TOMSIC,
VAN LINGEN TOWING, INC., VAN
LINGEN BODY SHOP, INC., ROBERT
VAN LINGEN and DOES 1 through 10,
inclusive,

    Defendants.

_____

Case No.: 2:22-cv-00404-MCS-RAO

**DECLARATION OF PLAINTIFF
KILEY SWAINE IN OPPOSITION
TO VAN LINGEN DEFENDANTS'
SPECIAL MOTION TO STRIKE
PLAINTIFF'S SIXTH CLAIM FOR
RELIEF FOR INTENTIONAL
MISREPRESENTATION / FRAUD
(ANTI-SLAPP MOTION)**

**DATE:**    **AUGUST 29, 2022**

**TIME:**    **9:00 A.M.**

**CTRM:**    **7C**

**UNITED STATES DISTRICT
JUDGE MARK C. SCARSI**

    I, plaintiff Kiley Deliefde Swaine, do hereby declare that the facts set forth herein are based upon my personal knowledge and upon information and belief and if called upon to testify I could do so competently:

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN
DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR
RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

1)      As set forth in my First Amended Complaint for Damages, on January 27, 2020, I was arrested by Torrance Police Department police officers Cody Weldin ("WELDIN"), Christopher Tomsic ("TOMSIC") for suspected conspiracy to commit mail theft from that Torrance, California, apartment building.

2)      Pursuant to that arrest of me by WELDIN and TOMSIC, I was taken away to jail at the Torrance City Jail and WELDIN and TOMSIC had my car was towed to Van Lingen Towing in Torrance, California.

3)      I was taken to the Torrance City Jail and booked on the conspiracy to steal charges[1]. The Torrance Police Department eventually determined that I was an innocent man, and the criminal charges were dropped against me.

4)      My car had not been vandalized, as described below, at the time of my arrest by WELDIN and TOMSIC on January 27, 2020.

5)      The next day, January 28, 2020, the Torrance Police Department attempted to telephone my mother, Gay DeLiefde Swaine, but she was at work, and was not able to call or respond to the call.

6)      My mother later saw the phone message from that attempted Torrance PD call to her, and on January 28, 2020 at approximately 3:30 p.m. that day, she called the Torrance Police Department back. My mother was told by the Torrance PD that I had been arrested and was presently incarcerated at the Torrance Police Department Jail.

7)      On January 28, 2020 My mother and father, Robert Preston Swaine and Gay DeLiefde Swaine, went to pick me up at the Torrance Police Department, as they were also told that I was to be released from police custody on a

---

[1] The police determined that I was an innocent man, and the criminal charges were dropped against me.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

misdemeanor citation.

8) On January 28, 2020, after I was cited and released from custody, my parents and I left the Torrance Police Department, and drove to the tow yard where my 2004 Hyundai sedan car had been towed to; Van Lingen Towing, at 2755 Lomita Blvd., in Torrance, California.

9) When we arrived at Van Lingen Towing, it was 5:15 p.m., and we were told by the towing company officer(s) / employee(s) / agent(s) present there, that they were closed, and for me to come back the next day to get my car released from the tow yard.

10) On January 29, 2020, my father, Robert Swaine, and I returned to Van Lingen Towing to retrieve my car from the tow yard.

11) When Van Lingen Towing delivered car to me at the tow yard, my father and I noticed that someone had vandalized my car.

12) I saw that someone had spray-painted a Swastika on the back seat of my car, a Happy Face on the front passenger seat, and some spray-paint on the rear bumper and on the passenger side outside rear view mirror.

13) In addition, I also saw that someone had emptied a box of cereal and some protein powder all over the interior of my car. It appeared to me that the interior of my car had been deliberately and intentionally "trashed" by someone.

14) The towing company's representative told me that my car must have arrived that way, and I told him that my car was not in that condition when I was arrested and taken to jail.

15) The Van Lingen Towing representative then told me that they (the tow yard) had video surveillance cameras that would have captured the image of my car's condition when it came into the lot.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

3

16)     My father and I then decided it would be best for me to call the Torrance Police Department to report the vandalism to the my car, which they then proceeded to do.

17)     Thereafter, on January 29, 2020, shortly after I reported the vandalism to my car to the Torrance Police Department, Torrance Police Department officers went to Van Lingen Towing, and met meet and my father there.

18)     The responding Torrance Police Department police officers inspected the damage to my car, and spoke to me about how my car was not in that condition when I was arrested and taken to the Torrance City Jail.

19)     The Torrance police officers appeared to begin to write their report and confiscated the spray-paint can that had been left inside my car, that was apparently used to vandalize the same.

20)     Said Torrance Police Department police officers spoke with my father and I, and the towing company's representative(s), who told the officers that they had video surveillance of their lot, and that a review of it might determine if the car arrived in that condition.

21)     They all went inside of the towing company's facility. My father and I were told to wait in the waiting area of that facility, while the police officers and the towing company's representative went into the tow yard office; an office with a large glass window.

22)     Through the window, my father and I observed the officers and the towing company's representatives and said police officers watching the video, but from their angle, they could not see what the police officers and the towing company personnel were viewing.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

4

23)     After a short time of viewing the video, the above-referenced Torrance Police Department police officers and the towing company representatives exited the tow yard office and approached my father and I at the same.

24)     The Torrance police officers told me, and/or at least watched the towing company's representatives tell me that the towing company accepted responsibility for the damage to his car, that they suspended one of their employees who they suspected to have vandalized it, that they were further investigating the matter, and that Van Lingen Towing would pay for the damages to my car.

25)     Based upon that series of events at the tow yard on January 29, 2020, including Van Lingen Towing immediately accepted responsibility for the damage to the my

     car, based upon the officer's presence at the towing office and the nature of those discussions there with the towing company's representatives, above-referenced, and a subsequent series of events, described below, I was induced by said Torrance Police Department police officers and said towing company personnel, to believe that a Van Lingen Towing driver / employee / agent had been the person(s) who vandalized his car, and not any police officer.

26)     Van Lingen Towing's employee / agent also told me to get estimates for the repair of the car, and my father and I then left the tow yard.

27)     Based on my discussions with the Torrance police officers I then drove his vandalized car home. While I did so, the protein powder blew all over me and my car's interior.

28)     I was extremely upset and felt violated. Moreover, being unable to use the passenger side mirror made it a safety hazard.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

5

29)    Thereafter, I obtained estimates to repair the exterior of my vandalized car, .and another one to repair the interior of the vehicle.

30)    On February 20, 2020, I emailed Van Lingen Towing the estimates for his car repair; said estimates ranging from approximately $2,000.00 to approximately $2,500.00.

31)    Thereafter, I received a call from a Van Lingen Towing representative(s), who offered $2,250.00 to me to settle the matter between Van Lingen Towing and myself, regarding paying for the damage to my car.

32)    I believed that it was in my interest to take the $2,250.00, and on February 27, 2020, and I went to Van Lingen Towing and picked-up check for $2,250.00.

33)     Based upon the statements of the Torrance Police Department officers who arrived at Van Lingen Towing on January 29, 2020 in response to my complaint to the Torrance Police Department of that date regarding the vandalization of my car, and taking those together with the statements of the Van Lingen towing company representatives to me of January 29, 2020 as to who vandalized my car, one of their employees, I was deliberately and intentionally induced into believing that the Torrance Police Department had concluded along with Van Lingen Towing, that a Van Lingen Towing Company employee / agent / driver had been the person(s) who vandalized my car; not a Torrance Police Department police officer.

34)    Accordingly, when I accepted the $2,250.00 check from Van Lingen Towing on February 27, 2020, I had done so under an induced false belief that Van Lingen Towing had vandalized my car, and not any Torrance Police Department police officer.

35)    Accordingly, this "induced belief", that a Van Lingen Towing

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

6

employee (and not a police officer) vandalized my car, was perpetuated by the Torrance Police Department, well after the Winter of 2020.

36)     The Torrance Police Department was aware[2] since at least March of 2020, that defendant Torrance Police Department police officers Christopher Tomsic and Cody Weldin had been the persons who had vandalized my car.

37)     Moreover, during the Torrance Police Department's investigation of the vandalization of my car, they learned since at least the Spring of 2020, that Torrance Police Department police officers Christopher Tomsic and Cody Weldin were part of a White Supremacist / Neo-Nazi gang / group of police officers within the Torrance Police Department.

38)     Although the Torrance Police Department fired police officers Christopher Tomsic and Cody Weldin, and apparently suspended fifteen (15) other Torrance Police Department police officers for being suspected members of some sort of White Supremacist / Neo-Nazi group(s) and/or gang(s) of police officers inside of the Torrance Police Department, the Torrance Police Department, from top Management to the line officers (i.e. DOES 3 and 4, and DOES 7 through 10, inclusive), made a deliberate conscious decision to not notify me that Christopher Tomsic and Cody Weldin were the ones who vandalized his car.

39)     The Torrance Police Department knew that I was induced by their conduct to believe that a Van Lingen Towing driver / employee / agent, and not a police officer, had vandalized my car on January 27, 2020.

40)     The Torrance Police Department knew that I had asked the Torrance Police Department to find that very information for me, and, that the I would have

---

[2] Or should have reasonably strongly suspected, from their knowledge of the Neo-Nazi police gangs within the Torrance Police Department.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

7

wanted to know that Torrance Police Department police officers WELDIN and TOMSIC were the actual vandals of his car. Yet, they failed to correct the false impression that they had intentionally induced me to believe, that it was a towing company driver / employee / agent who vandalized his car, and not a Torrance Police Department police officer.

41)     However, as shown above, Van Lingen Towing knew from their tow truck driver, Christopher Dunn, that defendants Cody Weldin and Christopher Tomsic were the vandals, when they represented to me that they believed that one of their tow truck drivers had vandalized my car.

42)     Moreover, the Torrance Police Department and their police officers, officials and agent also knew that its police officers had vandalized my car on January 27, 2020.

43)     Accordingly, in order to appease the Torrance Police Department by protecting that agency from civil liability and obloquy, in large part to retain Van Lingen's status as being on Torrance Police Department's rotational tow list for police tows, Van Lingen Towing conspired and agreed with Torrance Police Department police officers for Van Lingen Towing to accept the blame for the vandalism to the my car; to induce me to not suspect that any Torrance Police Department police officers had committed that act of vandalism to my car.

44)     All of this was done a part of an ongoing conspiracy, agreement and understanding, between the Torrance Police Department and Van Lingen Towing representatives[3], to make and keep me ignorant of the fact that Torrance Police

_____

[3] An employee / agent / officer / manager of Van Lingen Towing, Inc. and/or Van Lingen Body Shop, Inc. and/or Robert Van Lingen, and/or DOES 5 and 6, who was acting in the course and scope of his employment with those entities / persons, or their *alter ego's*.

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

Department Cody Weldin and Christopher Tomsic were the real vandals who painted and damages his car; not some towing company employee / agent / officer / driver as said conspirators had convinced the me.

45)     This conspiracy resulted in me not filing a California Government Claim for Damages[4] against the City of Torrance until January 19, 2022; a predicate to filing a lawsuit against the City of Torrance and the involved Torrance police officers for vandalizing his car under California state law.

46)     Thereafter, on October 2, 2021 I received two letters from the Los Angeles County of Probation Office; said letters informing me, *inter alia*, that criminal felony charges had been filed against (now former) Torrance Police Department police officers Cody Weldin and Christopher Tomsic for vandalizing my car on January 27, 2020, in the case of *The People of the State of California v. Christopher Tomsic and Scott Weldin*; Los Angeles County Superior Court Case Number BA497887.

47)     Those letters from the Los Angeles County Probation Department to me were the first notice that I had, that either Cody Weldin or Christopher Tomsic, or, that any other Torrance Police Department police officer had vandalized my car.

48)     Moreover, the false representation of fact by Van Lingen Towing and its officers and employees and by the Torrance Police Department, that it was a Van Lingen Towing employee / agent / driver who vandalized my car, and not a Torrance Police Department police officer, that I reasonably relied upon, caused me to suffer harm, to wit: a) accepting less money than I would have sought and

---

[4] Formerly known as the California Tort Claims

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION / FRAUD (ANTI-SLAPP MOTION)

9

would have accepted for the vandalizing of his car, if he had known that it had been done by a Torrance Police Department police officer(s) and not a Van Lingen Towing employee / agent / driver who vandalized my car, resulting in me obtaining less monies for the vandalizing of my car than I would have obtained had I not been so deceived by the defendants who conspired to induce this false belief by me as to who vandalized my car, and b) by delaying me from suing defendants City of Torrance, Cody Weldin, Scott Tomsic and the DOE defendants, under both state and federal law, and obtaining not only damages for the property damage to my car, but also damages for my mental and emotional pain, suffering and distress, as well as punitive damages.

49)    Accordingly, defendants City of Torrance, Cody Weldin, Christopher Tomsic, Van Lingen Towing, Inc., Van Lingen Body Shop, Inc., Robert Van Lingen and DOES 1 through 10, inclusive, are liable to me for their Intentional Misrepresentation / Fraud perpetrated upon me; described above.

I declare under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct.

This the 8th day of August, 2022 at Redondo Beach, California.

_____
KILEY SWAINE

DECLARATION OF PLAINTIFF KILEY SWAINE IN OPPOSITION TO VAN LINGEN
DEFENDANTS' SPECIAL MOTION TO STRIKE
PLAINTIFF'S SIXTH CLAIM FOR
10