WOODRUFF, SPRADLIN & SMART, APC
PATRICK M. DESMOND - State Bar No. 215029
pdesmond@wss-law.com
LAURA A. MORGAN - State Bar No. 202745
lmorgan@wss-law.com
555 Anton Boulevard, Suite 1200
Costa Mesa, California 92626-7670
Telephone: (714) 558-7000
Facsimile: (714) 835-7787

Attorneys for Defendant CITY OF TORRANCE, a public entity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILEY DELIEFDE SWAINE,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF TORRANCE, CODY WELDIN, CHRISTOPHER TOMSIC, VAN LINGEN TOWING, INC., VAN LINGEN BODY SHOP, INC., ROBERT VAN LINGEN and DOES 1 through 10, inclusive,<br><br>       Defendants. | CASE NO.: 2:22-cv-00404-MCS (RAO)<br><br>BEFORE THE HONORABLE MARK C. SCARSI<br><br>**DEFEDANT CITY OF TORRANCE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Defendant's Statement of Uncontroverted Facts and Conclusions of Law and Compendium of Evidence]*<br><br>HEARING DATES PENDING:<br>Type: Motion for Summary Judgment<br>Date: March 13, 2023<br>Time: 9:00 a.m.<br>Ctrm: 7C<br><br>Type: Final Pretrial Conference<br>Date: May 15, 2023<br>Time: 2:00 p.m.<br>Ctrm: 7C<br><br>ACTION FILED: January 19, 2022<br>TRIAL DATE: May 30, 2023 |

///

///

///

1741121.1

1

PLEASE TAKE NOTICE that on March 13, 2023, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of this Court, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California, Defendant CITY OF TORRANCE (the "City") will and hereby does move for an order under Federal Rule of Civil Procedure 56 granting summary judgment or partial summary judgment of issues in favor of the City as against Plaintiff KILEY DELIEFDE SWAINE ("Plaintiff").   This motion is made on the following grounds:[1]

1. Plaintiff's claim for relief for municipal liability under 42 U.S.C. § 1983 is barred because:

   a. There was no constitutional deprivation of procedural due process under the Fourth and/or Fourteenth Amendments.

   b. There was no constitutional deprivation of substantive due process under the Fourteenth Amendment.

   c. There was no constitutional deprivation of the takings clause under the Fifth Amendment.

   d. The City has not adopted an unconstitutional policy, custom, or practice that was the cause, in fact, of a constitutional deprivation.

2. Plaintiff's state law claims, for intentional misrepresentation/fraud, conversion, trespass to chattels, and intentional infliction of emotional distress are barred because:

   a. Plaintiff failed to timely present a claim to the City in compliance with the California Government Claims Act.

   b. Defendants Weldin and Tomsic were not acting within the scope of their employment when they vandalized Plaintiff's car.

This motion is made on the grounds that there is no genuine issue as to any material fact and that the City is entitled to judgment as a matter of law on the

---

[1] The issues listed here correspond to the issues identified in the Statement of Uncontroverted Facts and Conclusions of Law, filed and served separately.

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1

foregoing claims.

This motion is made following a meet and confer process conducted in accordance with Local Rule 7-3, which occurred on October 5, 2022 and January 27, 2023.

This motion is based upon this notice, the memorandum of points and authorities attached hereto, the statement of uncontroverted facts and conclusions of law, the compendium of evidence, including the declarations of Chief Jeremiah "Jay" Hart and Laura A. Morgan, and upon such additional oral and/or documentary evidence as may be presented to the Court at or before the hearing on this motion.

DATED:  February 6, 2023          WOODRUFF, SPRADLIN & SMART, APC


                                  By: */s/ Laura A. Morgan*
                                       PATRICK M. DESMOND
                                       LAURA A. MORGAN
                                       Attorneys for Defendant CITY OF
                                       TORRANCE, a public entity

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

3

1741121.1

## **TABLE OF CONTENTS**

1.  INTRODUCTION .................................................................................... 8

2.  SUMMARY OF FACTS AND ALLEGATIONS ........................................ 9
    - A.  Plaintiff learns of vandalism on January 29, 2020 ........................... 9
    - B.  Plaintiff settled damages claim with Van Lingen Towing ................ 10
    - C.  The Department investigates vandalism incident ............................. 10
    - D.  Plaintiff presented his government claim nearly two years later ........ 11
    - E.  Plaintiff files civil action ............................................................... 11
    - F.  Plaintiff's deposition testimony contradicted his allegation of delayed discovery and/or intentional concealment ............................ 12

3.  STANDARD OF REVIEW ...................................................................... 13

4.  THREE OF THE FOUR FEDERAL CONSTITUTIONAL CLAIMS ALLEGED AGAINST THE INDIVIDUALS ARE IMPROPER ............... 13
    - A.  Plaintiff cannot establish a violation of procedural due process ........ 14
    - B.  Plaintiff cannot establish a violation of substantive due process........ 14
    - C.  Plaintiff cannot establish an unconstitutional taking without just compensation ................................................................................... 15

5.  JUDGMENT SHOULD ENTER IN FAVOR OF THE CITY ON THE FEDERAL MUNICIPAL CLAIM ............................................................ 15
    - A.  The City has not adopted an unconstitutional practice or custom that inflicted the constitutional injury .............................................. 16
    - B.  The City has not failed to act with deliberate indifference to Plaintiff's constitutional rights ........................................................ 18

6.  PLAINTIFF FAILED TO TIMELY PRESENT A CLAIM IN COMPLIANCE WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT ...................................................................................................... 19
    - A.  The delayed discovery rule does not apply where only the identity of the wrongdoer is unknown, nor does it apply absent due diligence ......................................................................................... 20
    - B.  Plaintiff has no evidence of intentional concealment ........................ 21

7.  TOMSIC AND WELDIN WERE NOT ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT ................................................................... 23

8.  CONCLUSION ...................................................................................... 25

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................................13

*Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)............................................................14

*Bd. of Cty. Comm. of Bryan Cty. v. Brown*, 520 U.S. 397 (1997)..............................19

*Brown v. County of San Bernardino*, No. EDCV 20-1304 JGB (SHKx),
    2021 WL 99722, at *4 (C.D. Cal. Jan. 8, 2021) ......................................................16

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ...............................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................13

*Clouthier v. City of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010)..............................16

*Cordova v. Imperial Cnty. Narcotics Task Force*, No. 321CV00445BENDEB,
    2022 WL 84409, at *20 (S.D. Cal. Jan. 7, 2022) ....................................................17

*Cybernet, LLC v. David*, 954 F.3d 162 (4th Cir. 2020)................................................14

*Daniels v. Williams*, 474 U.S. 327 (1986) ...................................................................14

*Freecyclesunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. 2010) ..................13

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ....................................................16

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................................................14

*Hardage v. CBS Broad. Inc.*, 427 F.3d 1177 (9th Cir. 2006).......................................13

*Herd v. Cnty. of San Bernardino*, 311 F.Supp.3d 1157 (C.D. Cal. 2018)...................17

*Hudson v. Palmer*, 468 U.S. 517 (1984)......................................................................14

*Hunter v. Cty. of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) ....................................18

*J.M. by and Through Rodriguez v. Cnty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB,
    2018 WL 5879725, *5-6 (E.D. Cal. Nov. 7, 2018) ..................................................16

*Lawmaster v. Ward*, 125 F.3d 1341 (10th Cir. 1997).................................................14

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir.2003) ..................................................15

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005) ..................................................15

*Mateo-Sandoval v. City of Sonoma*, 942 F.Supp.2d 890 (N.D. Cal. 2013).................15

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) ...........................................16

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ................11, 13, 15, 16

*Mountford v. City of Santa Monica*, No. 2:20-cv-07220 MCS (Ex),

   2021 WL 1255188, *4 (C.D. Feb. 10, 2021) ....................................................17

*Park v. City and Cty. of Honolulu*, 952 F.3d 1136 (9th Cir. 2020) ..............................19

*Parratt v. Taylor*, 451 U.S. 527 (1981) .......................................................................14

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ...........................16

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*,

   402 F.3d 962 (9th Cir. 2005) ....................................................................................14

*Sanchez v. City of Fresno*, 914 F.Supp.2d 1079 (E.D. Cal. 2012) .............................15

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) ........................................19

*United States v. Kapp*, 564 F.3d 1103 (9th Cir. 2009) ................................................13

*United States v. Lanier*, 520 U.S. 259, n. 7 (1997) .....................................................14

*United States v. Ramirez*, 523 U.S. 65 (1998) ............................................................14

## STATE CASES

*Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133 (1981) .....................25

*Bernson v. Browning-Ferris Industries*, 7 Cal.4th 926 (1994).........................20, 21, 22

*Czajkowski v. Haskell & White, LLP*, 208 Cal.App.4th 166 (2012) ...........................20

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995)............23, 24, 25

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005)..........................................21

*Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623 (2007)....................................20

*Lisa M. v. Henry Mayo Newhall Memorial Hosp.*, 12 Cal.4th 291 (1995)............23, 24

*McKelvey v. Boeing North American, Inc.*, 74 Cal.App.4th 151 (1999)...............20, 21

*Monty v. Orlandi*, 169 Cal.App.2d 620 (1959) ...........................................................25

*Perry v. County of Fresno*, 215 Cal.App.4th 94 (2013) .........................................23, 24

*Rose v. Fife*, 207 Cal.App.3d 760 (1989) ....................................................................20

*State of California v. Superior Court* 32 Cal.4th 1234 (2004)...............................19, 20

*Thorn v. City of Glendale,* 28 Cal.App.4th 1379 (1994)..............................................25

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1

## FEDERAL STATUTES

42 U.S.C. section 1983 ...................................................................................... 8

Federal Rules Civil Procedure 56(a) ............................................................... 13

## STATE STATUTES

Government Code section 901 ......................................................................... 20

Government Code section 911.2 ...................................................................... 19

Government Code section 911.2(a) ................................................................. 20

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **1.    INTRODUCTION**

Two police officers vandalized Plaintiff Kiley Swaine's car when the car was being lawfully searched and impounded.  The officers spray painted the interior and exterior of the car, scattered protein powder and cereal around the interior, and painted a happy face and swastika on the upholstery.  The officers took steps to avoid detection.  The City of Torrance Police Department ("Department") investigation identified the culprits.  The officers lost their jobs.  Criminal proceedings are pending.

Plaintiff seeks to hold the City of Torrance ("City") vicarious liable for the acts of the now former officers.  Vicarious liability is only available, under some circumstances, in state tort causes of action.  However, Plaintiff's state court claims are time barred.  The delayed discovery doctrine does not apply.  Plaintiff did not exercise reasonable diligence, and the doctrine does not toll the limitations period where only the identity of the defendant is unknown.  Plaintiff's claims of intentional concealment also fail because, if for no other reason, Plaintiff admitted he had actual knowledge that police officers were potential suspects as soon as he picked up his car from the tow yard.  Vicarious liability is also not available because the former officers were not acting within the scope of their employment.

Vicarious liability is not available in actions brought under 42 U.S.C. section 1983.  Plaintiff alleges that the City held a longstanding custom of not disciplining constitutional violations by the rank and file, which created a culture of neo-Nazis and white supremacists and an expectation that acts in furtherance of this culture would not be disciplined.  The operative pleading does not identify any concrete examples of the type of conduct that went undisciplined.  Rather, it is understood that Plaintiff intends to rely on what has been well-reported in the press - that the investigation into the vandalism of Plaintiff's car uncovered the existence of a group of officers who had been exchanging racist, hateful and deeply offensive text messages and images.  Plaintiff alleges, in a conclusory fashion, that the City knew about the existence of this

1741121.1

group sometime before the vandalism to Plaintiff's car, but the opposite is true.

The City had no idea that this text message group existed prior to the investigation here. Since the discovery of this group, the City made it plain to the entire Department that no such conduct would be tolerated: immediate remedial action was taken. Municipal liability is not available under these facts.

In kitchen-sink fashion, Plaintiff alleges a host of his constitutional rights were violated when the former officers vandalized his car. The City agrees that Plaintiff's right to be free from an unreasonable search and seizure in violation of his Fourth Amendment right is implicated. However, vandalism to Plaintiff's personal property does not violate the other constitutional provisions alleged.

This motion is brought on behalf of the City alone. The City respectfully requests that judgment be entered in its favor on all claims against it.

## 2.   SUMMARY OF FACTS AND ALLEGATIONS

### A.   Plaintiff learns of vandalism on January 29, 2020

On January 27, 2020, City police officers, including Defendants Weldin and Tomsic and others, responded to an apartment building because of reports of mail theft. (City of Torrance's Uncontroverted Fact ["UF"] 1.) Plaintiff was among those detained and arrested in connection with these reports. (UF 2.) Plaintiff's car was towed to an impound lot by an employee of Van Lingen Towing. (UF 3.) Plaintiff does not challenge the propriety of the detention, arrest, or impound.

Plaintiff discovered that his car had been vandalized when he collected his vehicle from Van Lingen Towing on January 29, 2020. (UF 4.) Someone had spray-painted a swastika on the back seat of Plaintiff's car, a happy face on the front passenger seat, and applied spray paint to the exterior rear bumper and rearview mirror. (UF 5, 6.) Someone had emptied a box of cereal and protein powder around the interior of the car. (UF 7.) Plaintiff was aware, as of January 29, 2020, that someone had committed a wrongful act against him. (UF 16.)

///

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

1741121.1

Plaintiff complained immediately about the vandalism to Van Lingen Towing. (UF 17.)  He completed a written incident report for Van Lingen Towing (UF 18), and he reported the incident to the Department.  (UF 19.)    Police officers responded to the scene and stated that they would investigate the vandalism.  (UF 20, 21.)  One of the responding officers gave Plaintiff his business card with contact information.  (UF 22.)  A criminal investigation was opened.  (UF 8.)

**B.    Plaintiff settled damages claim with Van Lingen Towing**

In February 2020, Plaintiff negotiated with Van Lingen Towing to get paid for the damage to his car.  (UF 23.)  Plaintiff presented two quotes to repair the damage.  (UF 24.)  On February 27, 2020, Van Lingen Towing paid Plaintiff $2,250, and, in return, Plaintiff signed a release of all claims.  (UF 25.)  Plaintiff alleges that the company led him to believe that the tow truck driver vandalized the car. (UF 26.)  Plaintiff admits that no employee of the Department was present for these conversations.  (UF 27.)

**C.    The Department investigates vandalism incident**

During the investigation, the Department's Sergeant Masalcas spoke with Plaintiff by telephone on March 13, 2020 and again on March 25, 2020.  (UF 28, 29.)  Plaintiff does not remember the details of the two phone calls but remembers that Sgt. Masalcas asked Plaintiff who he believed might have committed the vandalism.  (UF 30.)  Plaintiff told Sgt. Masalcas that a potential suspect for the vandalism was one or more of the Department officers.  (UF 31.)  Plaintiff agreed that Sgt. Masalcas did not say anything in these phone calls to disabuse Plaintiff of his belief that police officers were potential suspects. (UF 32.)

Following the Department's investigation, criminal charges were filed against Weldin and Tomsic for vandalizing Plaintiff's car.  (UF 9.)  On October 2, 2021, Plaintiff received letters from the Los Angeles County Probation Office notifying him that criminal charges had been filed.  (UF 33.)  The criminal proceedings are pending.  The two officers are no longer employed by the City.  (UF 10.)

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

10

After the Department referred the matter, the Los Angeles District Attorney's Office uncovered the existence of a group of Department employees who had been exchanging racist, hateful, and deeply offensive text messages and images, and reported this discovery to the Department.  (UF 11.)  The messages and images exchanged were contrary to and in clear violation of Department policy.  (UF 13.)  Prior to this discovery, the City's Chief of Police had no prior knowledge or information about the existence of this group or that Department employees were exchanging such text messages and images. (UF 12, 14.)  Once the existence of this conduct was discovered, the City took immediate remedial action.  (UF 15.)

### D.    Plaintiff presented his government claim nearly two years later

Plaintiff presented his claim for damages on January 19, 2022.  (UF 34.)  The City rejected the claim as untimely on March 8, 2022.  (UF 35.)

### E.    Plaintiff files civil action

The First Amended Complaint ("FAC") alleges five federal causes of action under 42 U.S.C. section 1983 and four state causes of action.[2]  Plaintiff alleges Weldin and Tomsic violated Plaintiff's rights (1) to be free from unreasonable search and seizure, (2) to procedural due process, (3) to substantive due process, and (4) to just compensation for the taking of personal property.  In his fifth cause of action, Plaintiff alleges municipal liability against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The sixth through ninth causes of action are made under state law: (6) intentional misrepresentation/fraud, (7) conversion, (8) trespass to chattels, and (9) intentional infliction of emotional distress.  The ninth cause of action is identified in the caption only.  The body of the pleading does not allege any factual basis in support of the claim for intentional infliction of emotional distress.

Plaintiff alleged that his sixth through ninth causes of action are not time barred because he was unaware of the identity of the perpetrators until he received letters, on

---

[2] Plaintiff's First Amended Complaint was filed with this Court on March 29, 2022. (Dkt 12.)  A copy is attached as Exhibit A to the City's Compendium of Evidence.

1741121.1

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

October 2, 2021, notifying him that criminal charges had been filed against Tomsic and Weldin. (FAC, ¶¶ 6, 201, 202, 4:20-5:4, 53:8-19 [Dkt 12].)  Plaintiff also alleged members of the Torrance Police Department in concert with Van Lingen Towing intentionally concealed the true identity of the perpetrators until after the expiration of the time to file a government claim.  (e.g., FAC, ¶¶ 180-185, 47:3-49:11.)

**F.    Plaintiff's deposition testimony contradicted his allegation of delayed discovery and/or intentional concealment**

At deposition, Plaintiff admitted that he suspected, as early as January 29, 2020, that police officers could have been responsible for the vandalism.  (UF 37.)  He testified as follows:

> Q    So on January 29th at the Van Lingen yard when you first observed the vandalism to your car and before you spoke to anybody, did it cross your mind that at least possible suspects that may have caused the vandalism were either the tow truck driver or Torrance police officers?
>
> A    Yes.  (UF 36.)

This testimony is consistent with his statements to Sgt. Masalcas during the criminal investigation in March 2020, described above.  (UF 31.)

Despite his belief that Torrance police officers were potential suspects, Plaintiff took no steps to find out whether his suspicion had merit.  (UF 38, 42.)  Between January 29, 2020 (the date he picked up his car) and October 2, 2021 (the date he received notice that criminal charges were being filed), he did not call the Department (UF 39); he did not obtain or try to obtain a copy of a police report about the vandalism or its investigation (UF 40); and he did not contact an attorney.  (UF 41.)  Plaintiff admitted he made no effort to investigate whether a Torrance Police Department officer vandalized his car.  (UF 38, 42.)

///

///

1741121.1

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

### 3.    STANDARD OF REVIEW

Summary judgments are not disfavored.  They are an integral part of the Federal Rules of Civil Procedure, and are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Summary judgment is appropriate when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56, subd. (a). The party seeking summary judgment meets its initial burden by demonstrating an absence of a genuine issue of material fact. *Celotex*, *supra*, 477 U.S. at 323; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); see also, *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009).  A fact is "material" only if it might affect the outcome of the suit under the governing law. *Anderson*, *supra*, 477 U.S. at 248-249.  A dispute is "genuine" as to a material fact only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248; *Freecyclesunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).  A motion for summary judgment may not be defeated by evidence that is "merely colorable" or "is not significantly probative." *Anderson*, *supra*, 477 U.S. at 249-250; *Hardage v. CBS Broad. Inc*., 427 F.3d 1177, 1183 (9th Cir. 2006).

### 4.    THREE OF THE FOUR FEDERAL CONSTITUTIONAL CLAIMS ALLEGED AGAINST THE INDIVIDUALS ARE IMPROPER

To state a constitutional claim for violation of civil rights against a public entity, a plaintiff must establish both a constitutional deprivation and the existence of a local policy, custom or practice that was the cause in fact of that constitutional deprivation. *Monell v. New York Dept. of Social Services*, *supra*, 436 U.S. at 694.  In

his second, third and fourth causes of action, the facts alleged do not meet Plaintiff's claims of a constitutional deprivation.

The FAC alleges facts that, if true, would constitute an unreasonable search and seizure under the Fourth Amendment.  *United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful"); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971, 973 (9th Cir. 2005) (unnecessary destructive behavior in the course of a lawful search violates the Fourth Amendment); see also, *Cybernet, LLC v. David*, 954 F.3d 162, 169-170 (4th Cir. 2020); *Lawmaster v. Ward*, 125 F.3d 1341, 1349-1350 (10th Cir. 1997).  However, the other claimed constitutional provisions do not apply.

### A.    <u>Plaintiff cannot establish a violation of procedural due process</u>

A random, unauthorized intentional deprivation of property by a public employee does not constitute a violation of the procedural requirements of the due process clause if a meaningful state post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533, 536 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). The California Tort Claims Act provides an adequate post-deprivation remedy for the deprivation of property.  *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir. 1994). The criminal actions of Weldin and Tomsic were random and unauthorized.

### B.    <u>Plaintiff cannot establish a violation of substantive due process</u>

A substantive due process claim does not lie when the type of conduct challenged is specifically addressed by another, more specific constitutional provision. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997).   The Fourth Amendment is the more specific constitutional provision.

///

///

1741121.1

**C.** **Plaintiff cannot establish an unconstitutional taking without just compensation**

Plaintiff's fifth amendment claim fails because his property was not taken/damaged for a "public use." *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1106 (E.D. Cal. 2012). "The takings clause only requires compensation in the event of otherwise proper interference amounting to a taking." *Ibid*., citing *Lingle v. Chevron U.S.A., Inc*., 544 U.S. 528, 543 (2005), internal quotations omitted ("if a government action is found to be impermissible … that is the end of the inquiry. No amount of compensation can authorize such action."). "The public use requirement goes to the legitimacy of the government's taking to begin with; if a taking is not for public use, the government has no right to complete the act of eminent domain." *Mateo-Sandoval v. City of Sonoma*, 942 F.Supp.2d 890, 912 (N.D. Cal. 2013), quoting *Lee v. City of Chicago*, 330 F.3d 456, 475 (7th Cir.2003) (Wood, J., concurring) (internal quotations omitted). Plaintiff's claim is that the damage to his car was unlawful. If true, the damage to his car cannot be made lawful through payment of just compensation. Plaintiff's claims do not give rise to an action under the Fifth Amendment taking clause.

**5.** **JUDGMENT SHOULD ENTER IN FAVOR OF THE CITY ON THE FEDERAL MUNICIPAL CLAIM**

Municipal liability contains two primary elements: the existence of a constitutional deprivation and the existence of a local policy, custom or practice that was the cause in fact of that constitutional deprivation. *Monell v. New York Dept. of Social Services*, *supra*, 436 U.S. at 694. Even if Plaintiff is able to advance evidence of a constitutional deprivation, Plaintiff cannot prove the existence of a policy, custom or practice that was the cause in fact thereof.

Municipal liability for civil rights violations is limited to the following three circumstances: (1) when the municipality's official policies or established customs inflicted the constitutional injury; (2) when the municipality's omissions, in the form

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

of a failure to train or failure to discipline employees, showed "deliberate indifference" to constitutional rights; or (3) when a government official with final policy-making authority either committed the underlying constitutional violation or ratified the unconstitutional conduct of a subordinate. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018); see also *Clouthier v. City of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), overruled on other grounds in *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). Plaintiff's fifth cause of action for *Monell* liability alleges that his facts fall within the first or second theory. The evidence does not support municipal liability under either theory.

A. **The City has not adopted an unconstitutional practice or custom that inflicted the constitutional injury**

Municipal liability may be premised on a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). A "plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

"Courts have repeatedly rejected sweeping allegations of policies and customs in the absence of facts supporting their existence and applicability." *Brown v. County of San Bernardino*, No. EDCV 20-1304 JGB (SHKx), 2021 WL 99722, at *4 (C.D. Cal. Jan. 8, 2021) (cases collected therein). Rather, courts are looking for evidence of other, similar incidents and whether a municipal official with policymaking authority either helped formulate the custom or practice or was aware that such informal custom or practice existed. *Gillette v. Delmore*, *supra*, 979 F.2d at 1349; *J.M. by and Through Rodriguez v. Cnty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, *5-6 (E.D. Cal. Nov. 7, 2018).

To plead and prove the existence of a longstanding policy or custom, a plaintiff must "'(1) identify the challenged policy/custom; (2) explain how the policy/custom is

1741121.1

deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur.'" *Cordova v. Imperial Cnty. Narcotics Task Force*, No. 321CV00445BENDEB, 2022 WL 84409, at *20 (S.D. Cal. Jan. 7, 2022) (quoting *Herd v. Cnty. of San Bernardino*, 311 F.Supp.3d 1157, 1167 (C.D. Cal. 2018)).

The plaintiff must do more than summarily and vaguely refer to prior incidents of wrongdoing by officers on dates unknown: The plaintiff must provide "a sufficient factual recitation about each past incident," when the incident occurred, and "whether the City took any action against the police officers involved in most of the incidents." *Mountford v. City of Santa Monica*, No. 2:20-cv-07220 MCS (Ex), 2021 WL 1255188, *4 (C.D. Feb. 10, 2021).

Plaintiff alleged no pattern of similar acts of vandalism or biased treatment of arrestees for which Department officers were not disciplined. Plaintiff provided no factual recitation of any past incidents, which he alleges evidence the unconstitutional policy or custom of the Department. Instead, the FAC alleges, in conclusory fashion, that the Department ignored unidentified violations of constitutional rights, which created a culture of violence and excessive force, which, in turn, allowed gangs of white supremacists and neo-Nazis within the Department to fester. (FAC, ¶¶ 146, 147, 36:22-40:9 [Dkt 12].) Plaintiff alleges further that the goal of the white supremacists and neo-Nazis – "to terrorize the public" - became the *de facto* policy goal of the Department, and this alleged *de facto* policy was the proximate cause of the vandalism to Plaintiff's car. (FAC, ¶¶ 148-151, 40:9-41:18.) Again, Plaintiff provides no facts to support these theories.

Plaintiff hints that the basis for this theory is the discovery of the group of Department employees exchanging offensive text messages and images – the group which was discovered as part of the investigation of the vandalism here. (FAC, ¶ 77, 20:5-10 [Dkt 12].) But even Plaintiff acknowledges that Tomsic and Weldin were

1   fired and that the officers involved in the offensive text messaging group were all

2   suspended.  (FAC, ¶ 78, 20:10-15.)  To advance Plaintiff's theory that the Department

3   historically and repeatedly failed to discipline officers creating a white

4   supremacist/neo-Nazi culture, Plaintiff would need to set forth the factual basis of

5   incidents where officers engaged in unconstitutional or biased conduct for which they

6   were not disciplined.  The facts alleged at Paragraphs 77 and 78 of the FAC are to the

7   contrary; according to Plaintiff, all allegedly involved in the wrongful conduct were

8   disciplined. (FAC, 20:5-15.)

9       In addition, the City provides the declaration of its Chief of Police, Jeremiah

10  "Jay" Hart.  Chief Hart explains that the Department employees who engaged in the

11  offensive text message group were first identified only after the criminal investigation

12  of the vandalism to Plaintiff's car, and that once discovered, the City took immediate

13  remedial action.  (UF 11-15.)  The existence of this group was not obvious prior to the

14  vandalism.  (UF 11, 14.)  The alleged inaction could not have been a cause in fact of

15  the vandalism because it was not obvious beforehand.  Plaintiff has no facts of a

16  pattern of misconduct about which the City was deliberately indifferent.  Municipal

17  liability is not available under these facts.

18      **B.    The City has not failed to act with deliberate indifference to**

19          **Plaintiff's constitutional rights**

20      "[A] custom or practice can be inferred from widespread practices or evidence

21  of repeated constitutional violations for which the errant municipal officers were not

22  discharged or reprimanded."  *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th

23  Cir. 2011) (citations and internal quotations marks omitted).  "[E]vidence of inaction –

24  specifically failure to investigate and discipline employees in the face of widespread

25  constitutional violations – can support an inference that an unconstitutional custom or

26  practice has been unofficially adopted by a municipality."  *Id*. at 1234, n. 8 (emphasis

27  omitted).

28  ///

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

Heightened requirements exist in inaction cases.  In addition to evidence of a history of inaction that violates the constitution, the plaintiff must establish that the custom amounts to "deliberate indifference" to the plaintiff's constitutional right and that the municipality could have prevented the violation with appropriate intervention. *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012).   Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Park v. City and Cty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citing *Bd. of Cty. Comm. of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  In other words, this requires showing that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation."  *Tsao*, *supra*, 698 F.3d at 1145.  As to the second requirement, the plaintiff must establish that policy of inaction **caused** the constitutional violation in the sense that the municipality could have done something to prevent the violation. *Id*. at 1143.

Here, Plaintiff's theory is that the offensive text message group was known before the vandalism by Weldin and Tomsic, and that failure to discipline those officers created a culture in which Weldin and Tomsic felt free to vandalize Plaintiff's car without fear of being caught or punished.  However, the undisputed evidence is that Chief Hart did not know or have reason to know about the offensive text message group prior to the vandalism to Plaintiff's car.  (UF 14.)  Absent proof that Chief Hart was aware of the offensive text message group ahead of time, Plaintiff cannot establish that a policy of inaction caused the constitutional violation.

## 6.    PLAINTIFF FAILED TO TIMELY PRESENT A CLAIM IN COMPLIANCE WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT

Subject to certain exceptions, before suing a public entity, the plaintiff must present a timely written claim for damages to the entity.  Cal. Gov. Code, § 911.2; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239 (*Bodde*).

WOODRUFF, SPRADLIN & SMART ATTORNEYS AT LAW COSTA MESA

1741121.1

1  Compliance with the claim requirement is a condition precedent to suing the public

2  entity. *Bodde*, *supra*, 32 Cal.4th at 1240. California Government Code section 911.2

3  provides that where a claim relates to a "cause of action for … injury to person or to

4  personal property" the claim must be presented "not later than six months after the

5  accrual of the cause of action." Cal. Gov. Code, §911.2, subd. (a).

6      The accrual date for calculating the claims presentation period is the same as it

7  would be if the action were between private litigants. Cal. Gov. Code, §901. A cause

8  of action is presumed to accrue when the plaintiff's injury occurs. *Grisham v. Philip*

9  *Morris U.S.A., Inc*., 40 Cal.4th 623, 638 (2007). The plaintiff has the burden of

10 rebutting the presumption by pleading and proving facts establishing delayed

11 discovery of the injury. *Ibid*. If the undisputed facts establish discovery by a

12 particular date, accrual can be resolved on summary judgment. *Rose v. Fife*, 207

13 Cal.App.3d 760, 770 (1989).

14     Plaintiff acknowledges that his claim was presented to the City more than six

15 months after the date that the vandalism was discovered. Plaintiff argues that he is

16 excused from that delay by the delayed discovery rule or an intentional concealment

17 theory. Neither exception to the time bar applies.

18     **A.    The delayed discovery rule does not apply where only the identity of**

19            **the wrongdoer is unknown, nor does it apply absent due diligence**

20     To rely on the delayed discovery rule, the plaintiff must plead and prove facts to

21 show "(1) the time and manner of discovery and (2) the inability to have made earlier

22 discovery despite reasonable diligence." *McKelvey v. Boeing North American, Inc*.,

23 74 Cal.App.4th 151, 160 (1999), partly superseded by statute on other grounds as

24 noted in *Grisham*, *supra*, 40 Cal.4th at 637, n. 8.

25     Delayed discovery does not toll the statute of limitations where only the identity

26 of the defendant is unknown. *Bernson v. Browning-Ferris Industries*, 7 Cal.4th 926,

27 932-933 (1994); *Czajkowski v. Haskell & White, LLP*, 208 Cal.App.4th 166, 178-179

28 (2012). Well-established case law distinguishes between ignorance of the <u>wrongdoer</u>

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

and ignorance of the <u>injury</u>.  Only ignorance of the injury permits reliance on the delayed discovery rule.  *Bernson*, *supra*, 7 Cal.4th at 932.  The rationale is that once the plaintiff is aware of the injury, the limitations period "normally affords sufficient opportunity to discover the identity of all the wrongdoers." *Ibid*.

Delayed discovery does not toll the limitations period unless the plaintiff can demonstrate he exercised reasonable diligence.  *McKelvey*, *supra*, 74 Cal.App.4th at 160; see also, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 803 (2005) (to prove delayed discovery, the plaintiff must "prove that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.").

The delayed discovery rule does not apply here for two main reasons.  First, the existence of the injury was obvious on January 29, 2020.  (UF 4-7, 16, 17, 18, 19.)  Plaintiff knew on January 29, 2020, that he had been injured and it was due to a wrongful cause.  (UF 16.)  Because the delayed discovery only applies where the discovery of the injury is delayed, the limitations period was never tolled.  Second, even assuming the limitations period tolled, pending the discovery of the identity of the wrongdoers, Plaintiff cannot establish that he conducted a reasonable investigation.  Plaintiff knew who the potential suspects were from the start.  (UF 31, 36, 37.)  He knew that the only potential suspects were the tow truck driver and/or the police officers.  (UF 36, 37.)  Yet, Plaintiff took no steps to investigate whether the police officers were responsible for the vandalism.  (UF 38-42.)  He never called the Department (UF 39), despite being given a business card by an officer when he first reported the crime.  (UF 22.)  He never requested a report from the Department.  (UF 40.)  And he never contacted an attorney prior to receiving notice that criminal charges were being filed against Tomsic and Weldin.  (UF 41.)  Delayed discovery does not toll the limitations period.

## B.    **Plaintiff has no evidence of intentional concealment**

Plaintiff claims that the City, alone or together with Van Lingen Towing, intentionally concealed the perpetrators' identities from him or misled him to believe

1741121.1

that the tow truck driver was responsible.  (FAC, ¶¶181-185, 47:10-49:11 [Dkt 12].)

To rely on an intentional concealment theory, the plaintiff must plead and prove: (1) that the defendant's actions constituted intentional concealment, (2) that the defendant's actions, in fact, deprived the plaintiff of knowledge of the defendant's identity, and (3) that the plaintiff exercised reasonable diligence in attempting to uncover the defendant's identity.  *Bernson*, *supra*, 7 Cal.4th at 937-938.  Plaintiff can meet none of these elements.

To establish the first element for fraudulent concealment requires "affirmative deceptive conduct" unless the parties have a fiduciary relationship.  *Long v. Walt Disney Co*., 116 Cal.App.4th 868, 874 (2004).  There is neither a fiduciary relationship nor affirmative deceptive conduct by the City.

As to the second element, Plaintiff was never deprived, in fact, of the knowledge that Department employees' were suspects.  Plaintiff knew on January 29, 2020, that the Department's police officers were potential suspects (UF 36, 37), and no one from the Department tried to dissuade him of this suspicion.  (UF 32.)  It is anticipated that Plaintiff intends to rely on Van Lingen Towing's agreement to pay for the damages as evidence of an intent to mislead.  But Van Lingen Towing paid Plaintiff on February 27, 2020. (UF 25.)  And Plaintiff maintained his suspicion, in his phone calls with Sgt. Masalcas, that police officers could be to blame a month later, in March 2020.  (UF 28-32.)

Plaintiff also cannot prove the third element.  Plaintiff admitted he took no steps to identify the culprits of the vandalism. (UF 38-42.)  No intentional concealment was present here.

Assuming that accrual was tolled until March 25, 2020, the date of the second call with Sgt. Masalcas, Plaintiff's claim was still late.  Pursuant to Government Code section 911.2, Plaintiff was required to present his claim to the City within six months, or 183 days.

///

1741121.1

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

Arguably, the time to present a claim was tolled from April 6, 2020 until October 1, 2020, under the California Judicial Council's Emergency Rule 9, subdivision (a), issued in response to the pandemic.[3]    With that extension, the deadline for Plaintiff to present a claim would have been no later than March 23, 2021.  March 25, 2020 to April 5, 2020 is eleven days.  One hundred seventy-two days after October 2, 2020 would have been March 23, 2021.  Plaintiff presented his claim on January 19, 2022 (UF 34), several months too late.

## 7.    TOMSIC AND WELDIN WERE NOT ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT

The facts alleged demonstrate that Tomsic and Weldin were acting outside the scope of their employment when they vandalized Plaintiff's car.  The City cannot be held vicariously liable for the former officers' vandalism.

The doctrine of respondeat superior applies to public and private employers alike.  The same scope-of-employment analysis undertaken in private employer contexts applies equally when determining the scope of employment for purposes of the Government Claims Act. *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1003 (1995).  The plaintiff bears the burden to establish that an employee was acting within the scope of his or her employment.  *Perry v. County of Fresno*, 215 Cal.App.4th 94, 101 (2013).  Where the facts are undisputed, the determination of whether an employee has acted within the scope of employment can be decided on summary judgment.  *Lisa M. v. Henry Mayo Newhall Memorial Hosp.*, 12 Cal.4th 291, 299 (1995).

To establish an act was within the scope of employment, a plaintiff must establish a "causal nexus" between the tort and the employee's work.  *Lisa M.*, 12

---

[3] California Judicial Council Emergency Rule 9, subdivision (a), provides:

"Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020."

1741121.1

Cal.4th at 297. That is, the plaintiff must show that the tort was "engendered by" or an "outgrowth" of the employment. *Id*. at 298. If, on the other hand, the employee acts out of personal motives unconnected to his employment, the employer is not liable. *Farmers*, *supra*, 11 Cal.4th at 1004-1005. The California Supreme Court in *Lisa M*., *supra*, explained why the motive of the employee is relevant to this inquiry: "An act serving only the employee's personal interest is less likely to arise from or be engendered by the employment than an act that, even if misguided, was intended to serve the employer in some way." 12 Cal.4th at 298.

For example, in *Lisa M*., the Court held that a sexual assault by an ultrasound lab technician on a patient during an ultrasound exam was not within the scope of employment. 12 Cal.4th at 305-306. The lab technician's work put him in a position to commit his assault. But that was not enough to impose vicarious liability because the technician's "motivating emotions" were "not fairly attributable to work-related events or conditions." *Id*. at 301. As the court put it, "Hospital, by employing the technician and providing the ultrasound room, may have set the stage for his misconduct, but the script was entirely of his own, independent invention." *Id*. at 306. The high court held, "it would be unfair and inconsistent with the basic rationale of respondeat superior to impose liability on Hospital irrespective of its own negligence." *Ibid*.

In *Perry*, *supra*, 215 Cal.App.4th at 98, a correctional officer had access to prison records as part of his job. He used that access to write fake letters to inmates and others that purported to be from the plaintiff. The officer's aim was to prompt the inmates to retaliate against the plaintiff and scare the plaintiff into dropping a personal injury lawsuit against the officer. *Id*. at 98-99. The county terminated the officer, and criminal charges for fraud and extortion were filed. *Id*. at 100. The court held that the county was entitled to summary judgment, reasoning that "The motivation behind this scheme was not generated by, or an outgrowth of, workplace responsibilities, conditions or events. Rather, [the officer's] endeavor was purely personal.

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

Accordingly, [the officer's] wrongful tort was outside the scope of employment." *Id.* at 102; *see also*, *Thorn v. City of Glendale,* 28 Cal.App.4th 1379, 1383 (1994) (City not vicariously liable for arson committed by fire marshal during building inspection: the arson "did not arise from the pursuit of the employee's purpose but was rather the result, we must assume, of a personal compulsion."); *Monty v. Orlandi*, 169 Cal.App.2d 620, 624 (1959) (bar owner not vicariously liable where bartender assaulted plaintiff in the course of a personal dispute with his common law wife).

In cases like these, "the risks are engendered by events unrelated to the employment, so the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable." *Farmers*, *supra*, 11 Cal.4th at 1006, citing *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 140 (1981).

Viewing the undisputed facts in light of these principals, Tomsic and Weldin were acting outside the scope of their employment when they vandalized Plaintiff's car.  The use of the swastika (UF 5), especially in the absence of any active dispute or conflict with Plaintiff arising out of the employment context, demonstrates that Tomsic and Weldin's misconduct was driven by personal malice or personal compulsion.  This was not conduct within the scope of their employment.

## 8. <u>CONCLUSION</u>

Based on the above and on the undisputed evidence, the City of Torrance is entitled to judgment in its favor on all of the claims brought against it by Plaintiff.

DATED:  February 6, 2023          WOODRUFF, SPRADLIN & SMART, APC

By: */s/ Laura A. Morgan*
    PATRICK M. DESMOND
    LAURA A. MORGAN
    Attorneys for Defendant CITY OF
    TORRANCE, a public Entity

1741121.1

# **PROOF OF SERVICE**

## **STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, CA 92626-7670.

On February 6, 2023, I served the foregoing document(s) described as **DEFENDANT CITY OF TORRANCE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐ **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

☐ **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope(s) by hand to the offices of the addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on February 6, 2023, at Costa Mesa, California.

/s/ *Vilay Lee*
VILAY LEE

26

1741121.1

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

## KILEY DELIEFDE SWAINE v. CITY OF TORRANCE, et al.

### USDC, CENTRAL DISTRICT OF CALIFORNIA
### CASE NO.:  2:22-cv-00404-MCS (RAOx)

### ASSIGNED TO JUDGE MARK C. SCARSI
### COURTROOM 7C
### REFERRED TO MAGISTRATE ROZELL A. OLIVER
### COURTROOM 590

### SERVICE LIST

Jerry L. Steering, Esq.
Brenton W. Aitken Hands
LAW OFFICES OF JERRY L. STEERING
4063 Birch Street, Suite 100
Newport Beach, CA 92660
T:  (949) 474-1849 | F:  (949) 474-1849
Email:  jerry@steeringlaw.com
          brentonaitken@gmail.com
Alexandria Coyhis – Legal Assistant
Email:  alex.sterringlaw@gmail.com

Attorneys for Plaintiff
KILEY DELIEFDE SWAINE


Louis J. Esbin, Esq.
LAW OFFICES OF LOUIS J. ESBIN
27451 Tourney Road, Suite 120
Valencia, CA 91355
T:  (661) 254-5050 | F:  (661) 254-5252
Email:  louis@esbinlaw.com

Attorneys for Defendants
VAN LINGEN TOWING, INC.,
VAN LILNGEN BODY SHOP, INC.
and ROBERT VAN LINGEN


Richard A. Marcus, Esq.
LAW OFFICES OF RICHARD A. MARCUS
28494 Westinghouse Place, Suite 205
Valencia, CA 91355
T:  (661) 257-8877 | F:  (661) 775-9423
Email:  richard@attorneyrichardmarcus.com

Attorneys for Defendants
VAN LINGEN TOWING, INC.,
VAN LILNGEN BODY SHOP, INC.
and ROBERT VAN LINGEN


1741121.1

27

1  | Tom Yu, Esq.                                    Attorneys for Defendant
2  | Tristan G. Pelayes, Esq.                        CODY WELDIN
3  | LAW OFFICE OF PELAYES & YU, APC
4  | 10803 Foothill Boulevard, Suite 112
   | Rancho Cucamonga, CA 91730
   | T:  (909) 481-3833 | F:  (909) 801-7004
5  | Email:  tyu@pelayes-yu.com
6  |          tgp@pelayes-yu.com

7  | Cynthia Chamblin - Paralegal
8  | Email:   clc@pelayes-yu.com

9  | Sarah Magana – Office Manager
   | Email:  sm@pelayes-yu.com

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

1741121.1